In re Lori A. CAPOBIANCO, Debtor.

**Lori A. Capobianco, Appellant,**

v.

**Glen A. Trew, fdba Trew Audio Services, Appellee.**

BAP No. NC–99–1502–RBK.
Bankruptcy No. 98–33457–STC.
Adversary No. 98–3416–TC.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on March 24, 2000.

Decided May 16, 2000.

---

Irving J. Kornfield, Kornfield, Paul, Bupp & Nyberg, Oakland, CA, for Lori A. Capobianco.

Scott M. Reddie, McMormick, Barstow, Sheppard, Wayte & Carruth, Fresno, CA, for Glen A. Trew.

Before RUSSELL, BRANDT, and KLEIN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The appellee, a sole proprietorship, sued the appellant, a former employee, for misappropriation of funds in a Tennessee state court. Prior to the commencement of the state court trial, the appellant moved to California, where she filed her chapter 7[1] petition. The appellee, who had incorporated after the appellant's discharge, subsequently brought a nondischargeability action in the corporation's name. The appellant moved to dismiss on

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

the grounds that the corporate plaintiff was not a creditor to whom the debt was owed, as required by § 523(c)(1). In response, the appellee argued that he be allowed to substitute the sole proprietorship as the real party in interest under Rule 7017. The bankruptcy court denied the motion to dismiss and permitted the substitution. The appellee filed an amended complaint and the appellant answered. The parties later stipulated that a nondischargeable judgment would be entered against the appellant and that she would be entitled to appeal from the denial of certain affirmative defenses. Accordingly, the bankruptcy court entered judgment against her. This appeal followed. We AFFIRM.

## I. FACTS

In April 1992, the appellee, Glen Trew ("Trew"), hired Lori Capobianco, the appellant, as the office manager of his business, "Trew Audio Services." Trew Audio Services was an audio equipment business located in Tennessee operating as a sole proprietorship. Trew terminated Capobianco's employment on June 8, 1994, and on June 17, 1994, Trew incorporated his business as "Trew Audio Nashville, Inc."

In December 1994, he sued Capobianco in a Tennessee state court. He alleged that Capobianco had engaged in fraud, embezzlement, forgery, conversion, and misappropriation of funds while working for him, resulting in damages of approximately $107,109.78. Attached to his complaint were copies of numerous checks that she had allegedly signed and issued without authorization. Capobianco answered in February 1995 and discovery commenced. At her deposition, she invoked her Fifth Amendment privilege against self-incrimination and refused to answer questions regarding the checks.

Before the trial was to begin, Capobianco relocated from Tennessee to San Francisco. There, in August 1998, she filed her chapter 7 petition in the United States Bankruptcy Court for the Northern District of California. The deadline for nondischargeability actions was November 2, 1998.

Trew engaged California counsel to file an adversary proceeding in which he sought a judgment against Capobianco in the amount of $107,109.78 and a determination that such judgment was nondischargeable pursuant to § 523(a)(4) and § 523(a)(6). Filed on October 30, 1998, the complaint listed the plaintiff as "Trew Audio Nashville, Inc." Capobianco moved to dismiss under Rule 7012(b), alleging failure to state a claim upon which relief could be granted. Her main contention was that the plaintiff was not a creditor to whom the debt at issue was owed, as required by § 523(c)(1). She asserted that the debt was owed to "Glen A. Trew, dba Trew Audio Services," not "Trew Audio Nashville, Inc.," and emphasized that the state court action against her had been filed in that name. Capobianco pointed out that Trew had incorporated only after her employment had been terminated.

Trew opposed the motion to dismiss. He argued that an honest mistake had been made in naming "Trew Audio Nashville, Inc." as the plaintiff and urged that "Glen A. Trew dba Trew Audio Services" be substituted as the real party in interest pursuant to Federal Rule of Civil Procedure 17(a), made applicable by Federal Rule of Bankruptcy Procedure 7017. Capobianco replied that Rule 17(a) was irrelevant because her motion to dismiss was not based on grounds concerning real party in interest. She also contended that a substitution under Rule 17(a) would abridge her substantive right to a discharge under § 523(c)(1).

The bankruptcy court heard oral argument in January 1999 and denied the motion. Additionally, the court ordered Trew to file an amended complaint substituting the real party in interest on or before February 5, 1999. Trew's amended complaint, filed January 29, 1999, named "Glen A. Trew fdba Trew Audio Services" as the

plaintiff and was otherwise identical to the original complaint. Capobianco answered, admitting that she had executed most of the checks, but denying any wrongdoing. She also raised affirmative defenses, including:

> That the action herein is barred by the statute of limitations in that Plaintiff was duly listed as a creditor in Defendant's bankruptcy petition, was duly noticed of the time for filing complaints for nondischargeability, and failed to file his complaint within the time allowed by Federal Rules of Bankruptcy Procedure 4004.

> By reason of Plaintiff's failure to file a timely complaint objecting to dischargeability, any obligation owing from Defendant to Plaintiff has been discharged.

> By reason of Plaintiff's failure to file a timely complaint objecting to dischargeability, this Court lacks subject matter jurisdiction to determine this adversary proceeding.

Answer to First Amended Complaint, Feb. 26, 1999, pp. 5–6.

The adversary proceeding ended when, in August 1999, the parties entered into a stipulation whereby judgment would be entered against Capobianco in the amount of $96,758.55. The stipulation also provided that the judgment would be nondischargeable and that Capobianco would preserve the right to appeal from the court's denial of the quoted affirmative defenses. Judgment in accordance with the stipulation was entered on August 5, 1999. Capobianco timely appealed.

## II. ISSUES

A. Whether the substitution of the real party in interest under Rule 7017 abridged the debtor's substantive right to a discharge under § 523(c)(1).

B. Whether the application of Rule 7017 was warranted pursuant to the bankruptcy court's finding of "genuine uncertainty."

## III. STANDARD OF REVIEW

■ This appeal presents both conclusions of law and findings of fact. We review the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See In re Audre, Inc.,* 216 B.R. 19, 25 (9th Cir. BAP 1997)(citing *In re Burdge,* 198 B.R. 773, 776 (9th Cir. BAP 1996)).

## IV. DISCUSSION

### A. *Effect of Rule 7017 on the Debtor's Substantive Right to a Discharge under § 523(c)(1)*

■ Capobianco argues on appeal that the substitution of "Glen A. Trew fdba Trew Audio Services" as the real party in interest under Rule 7017 abridged her substantive right to a discharge under § 523(c)(1). We disagree.

■ Our discussion begins with 28 U.S.C. § 2075, which implements the Bankruptcy Rules. It provides that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." As the Ninth Circuit has explained:

> The [ ] bankruptcy rules were studied by committees of experts, then adopted by the Supreme Court, and became effective only after submission to Congress for review.... It cannot be assumed easily that the Supreme Court acted outside the power delegated to it under § 2075, or that Congress allowed rules to become operative which would effect substantive rights.

*In re Hill,* 811 F.2d 484, 487 (9th Cir.1987)(quoting *In re Moralez,* 618 F.2d 76, 78 (9th Cir.1980)). Thus, there is a strong presumption that the Bankruptcy Rules do not modify substantive rights. *See In re Greene,* 223 B.R. 548, 550 (N.D.Cal.1998) (citing *Moralez,* 618 F.2d at 78). Indeed, the Rules are presumptively valid if they are not inconsistent with a statute. *See In re Dominguez,* 51 F.3d 1502, 1507 (9th Cir.1995) (citations omitted).

Incorporating Federal Rule of Civil Procedure 17, Rule 7017 provides in pertinent part:

> Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Substitution of the real party in interest in this case, and the concomitant relation-back effect, meant that Trew's initial, timely-filed nondischargeability action naming the incorrect plaintiff was given effect. The result was that a proper party was able to object to Capobianco's discharge past the 60–day deadline for complaints objecting to discharge set forth in Rule 4007(c). Capobianco attacks this result on grounds that it abridged her right to a discharge under § 523(c)(1).

Capobianco's argument is without merit for the primary reason that § 523(c)(1), unlike Rule 4007(c), imposes no time limit for the filing of nondischargeability actions. Indeed, the Rule states in pertinent part: "A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Thus, Rule 7017 is not inconsistent with the Code, for the time limit is set by another rule. To persuade us otherwise, Capobianco cites two Ninth Circuit cases, neither of which is helpful to her.

She relies on *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064 (9th Cir.1994). There, the IRS filed a proof of claim for federal corporate incomes taxes, penalties, and interest against the debtor after the bar date. *See Pacific Atlantic*, 33 F.3d at 1065. The trustee objected to the IRS' claim and the bankruptcy court entered summary judgment disallowing the claim in its entirety. *Id.* The district court affirmed, holding that the claim was not entitled to priority status under § 726(a)(1). *Id.* On appeal, the IRS contended that its claim was entitled to priority status under the Code notwithstanding its failure to file a timely proof of claim as required by Rule 3002(c). *Id.* It contended that § 726(a)(1) drew no distinction between timely and tardy priority claims[2] and so its failure to comply with Rule 3002(c) had no effect on its claim's entitlement to first priority distribution. *Id.*

In its decision reversing the district court, the Ninth Circuit considered the proposition that "any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *Id.* at 1066 (citing *In re Cisneros*, 994 F.2d 1462, 1465 (9th Cir.1993)). The court hypothesized that "if the IRS's claim is 'allowed' according to the Code, Rule 3002(c) cannot 'disallow' it." *Id.* It then stated:

> We conclude that the plain language of sections 501 and 502 demonstrates that the Code "allows" this claim regardless of when proof of the claim is filed. Section 502's use of conclusory language in stating a claim "is deemed allowed" if filed in accordance with section 501 requires us to conclude that a claim is allowed as long as the requirements of section 501 are met. Section 501 only provides that a claim "may be filed" and imposes no time limit or other qualification on the filing of a claim. We disagree with the district court's conclusion that section 501 incorporates Rule 3002(c). While Rule 3002(c) mandates a claim be filed within 90 days, section 501 imposes no such requirement. Thus, to construe section 501 as incorporating Rule 3002(c) would create a result at

---

**2.**   Section 726(1) has since been amended.

odds with the plain language of the Code.

*Id.*

After concluding that the Rule did not disallow a late claim, but only divided claims into two categories (timely and late), the court turned to the question of the effect of a failure to comply with Rule 3002(c)'s time limitations on a priority claim's order of distribution under § 726(a). *Id.* at 1067. It held that § 726(a)(1)'s failure to distinguish between timely and tardy priority claims demonstrated that timeliness of a priority claim did not affect its entitlement to first priority. *Id.* (citation omitted). Thus, the IRS retained its first priority status.

Capobianco relies on *Pacific Atlantic* mainly for the court's statement regarding the prohibited effect of Rule 3002(c). Tracking the court's language, she states that "if [her] debt to Appellee was discharged by § 523(c)(2), Federal Rule of Bankruptcy Procedure 7017 cannot 'undischarge' it." Appellant's Opening Brief, p. 10. She ignores, however, the court's conclusion that Rule 3002(c) did not disallow late claims, but only divided claims into two categories (timely and late). Similarly, Rule 7017 does not "undischarge" her debt. It merely allows substitution of a real party in interest with a relation-back effect.

Capobianco also calls our attention to *In re Bergel*, 185 B.R. 338 (9th Cir. BAP 1995). In *Bergel*, the trustee sought to avoid liens created by two judgments that were recorded by the appellant against the debtor's assets. *See Bergel*, 185 B.R. at 339. The bankruptcy court granted the trustee's motion for summary judgment. *Id.* The appellant appealed only that portion of the ruling holding one of the abstracts recorded on the 91st day as a voidable preferential transfer, because, counting backwards from the petition date, the 90th day was a Saturday. *Id.* The issue was whether Rule 9006(a)[3] could be used to extend the 90–day preference period of § 547(b)(4)(A) when the 90th day fell on a Saturday, Sunday, or legal holiday. *Id.* We concluded that the power to avoid any preferential transfer within 90 days before the petition date was filed was a substantive element of § 547(b), rather than a procedural requirement. *Id.* at 341. We reasoned that § 547(b) did not require any affirmative act by the trustee and only created a statutory period in which certain transfers were voidable by the trustee. *Id.* Therefore, we held that the use of Rule 9006(a) to extend the preference period beyond the limitations set forth in § 547(b)(4)(A) was an impermissible enlargement of the trustee's substantive right to avoid transfers. *Id.*

Our holding in *Bergel* is not relevant to this appeal. In *Bergel*, the Code section at issue referred to a specific time frame, the 90–day reach back period. This limitations period was a substantive element of § 547(b) and as a result, 28 U.S.C. § 2075 precluded any extension of the period. Such an extension would have violated the condition that the Bankruptcy Rules not abridge, enlarge, or modify any substantive right. In this appeal, however, there is no limitations period in the Code section at issue. Moreover, to repeat, it is the Rules, not the Code, that contain the time limit for nondischargeability actions.

Thus, we hold that substitution of the real party in interest under Rule 7017 did not abridge Capobianco's substantive right to a discharge under § 523(c)(1). Having

---

**3.** Rule 9006(a) provides in relevant part:

**Rule 9006. Time.**

**(a) Computation.** In computing any period of time prescribed or allowed by these rules or by the Federal Rules of Civil Procedure made applicable by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a legal holiday ... in which event the period runs until the end of the next day which is not one of the aforementioned days.

so concluded, we turn to the issue of whether the application of the Rule was warranted.

### B. *Application of Rule 7017 due to Circumstances of "Genuine Uncertainty"*

■ Capobianco assigns error to the bankruptcy court's application of Rule 7017 to permit substitution of the real party in interest under circumstances of "genuine uncertainty" on Trew's part. We disagree.

*United States v. CMA, Inc.,* 890 F.2d 1070 (9th Cir.1989), is instructive, discussing the appropriate application of Federal Rule of Civil Procedure 17(a). In *CMA,* the prime contractor on a Veteran's Administration hospital supplied a payment bond written by an insurance company as required by the Miller Act, the purpose of which is to protect persons supplying materials and labor for federal projects. *See CMA,* 890 F.2d at 1071–72. The subcontractor responsible for the hospital's smokestack completed its work, but· was never paid. *Id.* at 1071. Judgment creditors of the subcontractor unsuccessfully attempted to collect on the contractor's obligation to the subcontractor. *Id.* Subsequently, they sued the contractor and insurance company under the· Miller Act. *Id.* Six days after the suit was filed, the Miller Act one-year statute of limitations expired. *Id.* The judgment creditors later obtained from the subcontractor a written assignment of its claim against the contractor. *Id.* The original complaint was amended to allege this assignment. *Id.*

The insurance company moved for summary judgment, arguing that the judgment creditors' claim based on the assignment was time-barred and did not relate back to the original complaint. *Id.* As to the original complaint, the insurance company noted that it was not based on a claim for labor or materials provided to a federal project. *Id.* The district court granted summary judgment in favor of the insurance company, concluding that the original claim did not state a Miller Act cause of action and that the amended claim did not relate back to cure the defect. *Id.* at 1071–72. On appeal, the judgment creditors argued in part that the subcontractor's assignment to them ratified their standing to bring the suit under Federal Rule of Civil Procedure 17(a). *Id.* at 1072.

The Ninth Circuit affirmed. In rejecting the judgment creditors' argument that the amended complaint could be construed as a specific ratification by the subcontractor of their right to maintain a Miller Act claim under Rule 17(a), the court first stated: "The purpose of ... Rule 17(a) is to prevent forfeiture of an action when determination of the right party to sue is difficult or *when an understandable mistake has been made." Id.* at 1074 (citations omitted)(emphasis added). The court observed that the only party entitled to sue under the Miller Act at the time the judgment creditors filed their original complaint was the subcontractor, who had supplied labor and materials to the federal construction project. *Id.* Efforts by the creditors to obtain an assignment of the subcontractor's claim against the contractor demonstrated that the creditors were aware that the subcontractor was the real party in interest. *Id.* at 1074–75. Thus, the court concluded, there was no difficulty and no mistake in determining who was the proper party to bring suit. *Id.* at 1075.

Below, Capobianco's counsel urged the bankruptcy court to draw the same conclusion in light of *CMA,* contending that "it certainly was not difficult to ascertain in this case who the real party in interest was and who the appropriate plaintiff ... should have been." Transcript of Hearing on Motion to Dismiss, Jan. 15, 1999, p. 6. The court noted that *CMA* was different in that it turned on an express assignment and involved two completely unrelated parties. It thus found:

Here we have a situation of genuine uncertainty. It takes some looking into the case after the incorporation to see

whether this particular claim has been passed to the business when it was incorporated. We have a short limitations period, and ... this is an area of easy confusion as to whether the claim belonged to the individual or the corporation when the claim arose before the incorporation without-to determine it, you'd have to go back and look at all the documents about incorporation. Easy subject of confusion.

Transcript of Hearing on Motion to Dismiss, Jan. 15, 1999, p. 18.

The court correctly distinguished *CMA.* The parties there were indeed two wholly separate entities, unlike the parties in this appeal. This factual distinction is significant because in *CMA,* it suggested that there was no difficulty and no mistake in determining the proper party to bring suit. Here, the parties were anything but wholly separate. "Glen A. Trew fdba Trew Audio Services" and "Trew Audio Nashville, Inc." were essentially the same party, the latter the incorporated successor to the former proprietorship. The court's finding, which paved the way to allow substitution of the real party in interest under Rule 7017, is consistent with the notion of understandable mistake cited in *CMA.*

Capobianco asserts that the court's finding of genuine uncertainty is not supported by evidence. The record indicates otherwise. Trew hired California counsel shortly before the deadline for filing nondischargeability actions. This fact, taken together with the almost identical pre- and post-incorporation names of Trew's business, readily explains how counsel could initially name the incorrect (corporate) plaintiff. Additionally, there is evidence that Trew's California counsel believed that the nondischargeability action belonged to the corporation. At the hearing on Capobianco's Motion to Dismiss, Capobianco's counsel stated: "What [Trew's] Counsel indicated to me, I got a letter initially—I have these in my file—indicating that he thought there had been a transfer—an assignment and when he filed these papers, he sent me another transmittal letter that said I think I was mistaken." Transcript of Hearing on Motion to Dismiss, Jan. 15, 1999, p. 11.

Capobianco does point out that attached to the original complaint for nondischargeability were copies of Trew's state court action and numerous checks allegedly executed by her. These documents contain only the name "Trew Audio Services" and, according to Capobianco, suggest that there could have been no uncertainty as to who the proper party was. In light of the totality of the record, however, we cannot say that the court clearly erred in making its finding of genuine uncertainty. Its use of Rule 7017 to allow substitution of the real party in interest indeed rests on a proper finding and was therefore correct.

Supporting our conclusion is *In re Meyer,* 120 F.3d 66 (7th Cir.1997). In *Meyer,* an officer/director personally guaranteed a loan made to his company. *See Meyer,* 120 F.3d at 67. The company defaulted on the loan and the lender sued both the company and officer/director in state court. *Id.* By the time he filed his chapter 7 petition, the real party in interest as the creditor in the loan had shifted from the original lender to the Resolution Trust Corporation. *Id.* The original lender timely filed a nondischargeability action against the debtor and the RTC was later permitted to substitute for it. *Id.* at 67–68. The bankruptcy court declared the debt nondischargeable and the district court affirmed. *Id.* at 67. On appeal, the debtor argued that the wrong entity filed against him in bankruptcy court and that this filing flaw forestalled pursuit by the Federal Deposit Insurance Corporation, the RTC's successor. *Id.*

The Seventh Circuit affirmed. The court rejected the debtor's argument that because the FDIC, as the real party in interest, had missed the Rule 4007(c) 60–day window in which to file a nondischargeability action, its claim had to be dismissed. *Id.* at 68. The court stated the following:

Rule 4007(c) guarantees a debtor a real fresh start. It defines a time certain when creditors may no longer come claiming that the debtor defrauded them and that certain debts should be nondischargeable. After the 60 days are over, all the demands for non-discharge that can be made, have been made. The debtor can relax. The force of Rule 4007(c) therefore should fall first and foremost on whether a complaint was filed against a specific debt, not so much who makes the complaint.

*Id.*

Under the view expressed in *Meyer*, what matters in this appeal is that the nondischargeability action was filed against Capobianco's debt to Trew, not that the action was initially brought by the wrong party. According to Capobianco, however, *Meyer* has no bearing on this appeal because it contradicts Ninth Circuit authority cited above. She asserts that *Meyer*, for example, ignored the proposition found in *Pacific Atlantic* that any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code. Here, though, this proposition is not relevant because there exists no such conflict. Additionally, the Seventh Circuit's decision in *Meyer* is consistent with the principle cited in *CMA* that substitution be permitted when determination of the real party in interest is difficult or when an understandable mistake has been made. Indeed, the decision states that the real party in interest there made an "understandable mistake." *Id.* at 69.

### V. CONCLUSION

In sum, substitution of the real party in interest under Rule 7017 did not abridge the debtor's substantive right to a discharge under § 523(c)(1). Additionally, the application of the Rule was warranted under the circumstances. We AFFIRM.