In re Gerald M. SCHLEHR, d/b/a Southside Welding & Machine, Kimberly D. Schlehr, h/i/i Kimberly D. Burton, Debtors.

In re Teresa Young, a/k/a Teresa Davidson, a/k/a Terry Young, a/k/a Teresa S. Young, Debtors.

In re Stanley E. Jarvar, Barbara J. Kramer–Jarvar, a/k/a Barbara J. Kramer, a/k/a Barbara Jarvar, Debtors.

In re Edward Robert Hayes, Patricia Ann Hayes, Debtors.

Bankruptcy Nos. 00–42503–13, 01–41640–13, 01–52327–13, 01–22835–13.

United States Bankruptcy Court, D. Montana.

Jan. 31, 2003.

D. Randy Winner, Great Falls, MT, for Gerald M. Schlehr and Kimberly D. Schlehr.

E. June Lord, Great Falls, MT, for Teresa Young.

Daniel S. Morgan, Missoula, MT, for Edward B. Hayes and Patricia Ann Hayes.

Robert D. Drummond, Great Falls, MT, trustee.

### MEMORANDUM OF DECISION

RALPH KIRSCHER, Bankruptcy Judge.

At Butte in said District this 31st day of January, 2003.

Hearings in the four above-captioned Chapter 13 cases were consolidated by Stipulation approved by this Court on June 27, 2002, for the purpose of hearing the Trustee's objections to Proofs of Claim filed in each of the four cases by Educational Credit Management Corporation ("ECMC"). The consolidated hearing on the Trustee's objections was held at Great Falls after due notice on September 26, 2002. The Chapter 13 Trustee Robert G. Drummond appeared in support of his objections. ECMC was represented by attorney Steven M. Johnson ("Johnson"). Dan Fisher ("Fisher"), associate attorney with ECMC in St. Paul, Minnesota, appeared and testified. By stipulation between the parties, Exhibits ("Ex.") 1, 2, 3, H–1, H–2, Y–1, Y–2, S–1, S–2, S–3, S–4, and S–5, were admitted into evidence. Ex. KJ–1 through KJ–9 were admitted on the condition that any illegible pages therein will be substituted[1]. At the completion of the parties' cases-in-chief the Court closed the record and granted the parties time to file briefs, after which these matters would be deemed submitted and taken under advisement. The parties' briefs have been filed[2] and reviewed by the Court, together with the record and applicable law. These matters are ready for decision.

This Court has jurisdiction over these four Chapter 13 cases under 28 U.S.C. § 1334(a). The pending objections are core proceedings under 28 U.S.C. § 157(b)(2)(B) involving allowance or disallowance of claims against the estate. The Trustee and ECMC stipulated that the issues in these four cases with respect to the Trustee's objections are identical. At issue is whether the Trustee has satisfied his burden of proof under F.R.B.P. 3007 and 11 U.S.C. § 502(a) to overcome the *prima facie* effect of ECMC's Proofs of Claim by operation of F.R.B.P. 3001(f), and produced proof negating the facts alleged in ECMC's claims that the collection costs included therein by operation of federal statute and regulation should be allowed. For the reasons set forth below, the Court concludes that the Trustee has failed to satisfy his burden of proof, and the Trustee's objections to ECMC's Proofs of Claim in these four Chapter 13 cases each will be overruled. This memorandum contains the Court's findings of fact and conclusions of law.

The background facts shown by the court files are not in dispute. Case No. 00–42503–13 was commenced by Gerald M. Schlehr and Kimberly D. Schlehr ("Kimberly") (together "Schlehrs") on October 3, 2000, when they filed their Chapter 13 petition and schedules. At Schedule F Schlehrs list a student loan in the amount of $8,180.59 owed to MHESAC. On November 16, 2000, ECMC filed Proof of Claim No. 4 asserting an unsecured, nonpriority claim in the total amount of $21,393.64. The attachments to ECMC's claim show two loans owed by the Debtor

---

1. Page 2 of Ex. KJ–4, KJ–8, was illegible. The Court granted Drummond 7 days to substitute a legible copy.

2. The Trustee filed his brief in each case on October 9, 2002. ECMC filed its reply brief on October 18, 2002.

Kimberly in the amounts of $8,800.33 and $12,593.31, respectively. The attachments list principal, interest accrued to the petition date, and "Collection Costs (pursuant to 34 C.F.R. § 682.410(b)(2)) and unpaid fees" in the amounts of $1,346.04 for one loan and $1,926.14 for the other. Also attached is a letter to ECMC dated November 6, 2000, from the Montana Guaranteed Student Loan Program assigning its rights to Kimberly's loans to ECMC. The Trustee filed an objection to ECMC's Proof of Claim on May 6, 2002, on the grounds ECMC did not file an application for compensation with this Court for the $3,172.18 in "collection costs" in compliance with F.R.B.P.2016. The Trustee's objection argues that there is no way he, the Debtors or the Court can determine what is included in the collection costs or how they were calculated. The Trustee's objection requests that the Court deny ECMC's Proof of Claim to the extent it includes the collection costs.

Case No. 01–41640–13 was commenced by Teresa Young ("Young") on May 25, 2001. At Schedule F Young lists three student loans owed to MHESAC ($2,829.05), MT Guaranteed Student Claims Management ($2,413.20), and Superior Credit Service ($3,201.84). On September 14, 2001, ECMC filed Proof of Claim No. 14 asserting an unsecured, nonpriority claim in the total amount of $4,802.48. The attachments to Claim No. 14 include an itemization of principal, interest, and collection costs claimed as in Case No. 00–42503–13 pursuant to 34 C.F.R. § 682.410(b)(2) in the amount of $915.60. Also attached is a letter to ECMC from the United States Department of Education assigning its rights to Young's student loans to ECMC. The Trustee filed an objection to ECMC's Proof of Claim on April 25, 2002, which was sustained by Order entered May 9, 2002, when ECMC failed to respond. Sub-sequently, after ECMC filed a response the Trustee withdrew his objection on May 23, 2002, but then filed another objection to ECMC's Proof of Claim No. 14 on June 3, 2002, on the grounds ECMC did not file an application for compensation for the $915.60 in collection costs in compliance with F.R.B.P.2016. The Trustee's objection argues that he cannot determine the costs included or the formula ECMC used, and that ECMC failed to provide required documentation of the student loan. The Trustee's objection requests that the Court deny ECMC's Proof of Claim No. 14.

Case No. 01–53527–13 was commenced by Stanley E. Jarvar and Barbara Kramer–Jarvar ("Barbara") (together "Jarvars") on November 23, 2001. One debt listed on Schedule F is in the amount of $26,153.00 owed to OSI with the description ("Ref: GLHEC"). On January 24, 2002, ECMC filed Proof of Claim No. 3 asserting an unsecured, nonpriority claim in the total amount of $28,874.97, including attachments showing two loans owed by Barbara listing principal, interest accrued to the petition date, and collection costs and unpaid fees pursuant to 34 C.F.R. § 682.410(b)(2) in the amounts of $4,207.05 and $1,077.38. Also attached are eight Stafford loan applications and promissory notes signed by Barbara to Great Lakes Higher Education Corporation ("GLHEC"). The Trustee filed an objection to Proof of Claim No. 3 on May 22, 2002, on the grounds ECMC did not file an application for compensation for the $4,207.05 in collection costs in compliance with F.R.B.P.2016. The Trustee's objection argues that there is no way he, the Debtors or the Court can determine what is included in the collection costs or how they were calculated. The Trustee's objection contends the collection costs are unreasonable, but does not specify whether

he wants ECMC's entire claim disallowed or just the collection costs.

Case No. 01–22835–13 was commenced by Edward Robert Hayes and Patricia Ann Hayes ("Patricia") (together "Hayes") on September 20, 2001. Hayes' Schedule F lists no student loans. On January 17, 2002, ECMC filed Proof of Claim No. 13 asserting an unsecured, nonpriority claim in the total amount of $8,614.47. The attachments to the claim list principal, interest, and collection costs pursuant to 34 C.F.R. § 682.410(b)(2) and unpaid fees in the total amount of $8,614.47 owed by Patricia, of which collection costs are stated as $1,763.87. Also attached is a letter to ECMC from the United States Department of Education assigning its rights to Patricia's student loan to ECMC. The Trustee filed an objection to Proof of Claim No. 13 on May 2, 2002, on the grounds ECMC did not file an application for compensation for the $1,763.87 in collection costs in compliance with F.R.B.P. 2016 or attach a copy of the promissory note. The Trustee's objection argues that there is no way to determine how the collection costs were determined and whether they contain attorney's fees, collection agency charges, court costs, or any unauthorized expenditures. The Trustee's objection requests that the Court deny ECMC's Proof of Claim No. 13 to the extent it includes unidentified fees.

The stipulated exhibits include all the missing promissory notes. Ex. H–1 is a promissory note executed by Patricia on 5/26/82 for a student loan in the amount of $2,500.00 [3]. Ex. S–1, S–2, S–3, and S–4 are promissory notes signed by Kimberly to the Montana Guaranteed Student Loan Program between 1987 and 1991 [4]. ECMC's Proof of Claim No. 3 filed in Case No. 01–53527–13 already included eight Stafford loan promissory notes signed by Barbara to GLHEC. Ex. KJ–1, KJ–2, KJ–3, KJ–4, KJ–5, KJ–6, KJ–7 and KJ–8 are additional copies of the same notes.[5] Ex. Y–1 is a promissory note signed by Young on 4/22/88 for a PLUS/SLS loan through Bank of Montana [6].

Fisher testified that ECMC is a guaranty agency under the Higher Education Act of 1964, with 400 employees. Fisher explained that a guaranty agency is a middleman between an original lender of a student loan and the Department of Education. If a borrower defaults on a student loan, the guaranty agency by law reimburses the original lender. Then, the guaranty agency has an obligation under federal regulation to attempt to collect from the borrower. ECMC's secondary function is to process bankruptcy cases for the U.S. Department of Education ("DOE") and other guaranty agencies through a charter with the DOE and a voluntary flexible agreement with the Secretary of Education. ECMC is also the primary guaranty agency for the Commonwealth of Virginia.

ECMC's Federal Servicing Bureau is the bankruptcy processing side for the DOE and other guaranty agencies. They transfer their Chapter 13 cases to ECMC and it administers them in accordance with applicable statutes and regulations. Fisher testified that a debtor's underlying obli-

---

**3.** Ex. H–2 is a copy of Proof of Claim 13 filed in Patricia's Case No. 01–22835–13.

**4.** Ex. S–5 is a copy of Proof of Claim 4 filed in Kimberly's Case No. 00–42503–13.

**5.** Ex. KJ–9 is a copy of Proof of Claim 3 filed in Barbara's Case No. 01–53527–13.

**6.** Ex. Y–2 is a copy of Proof of Claim 14 filed in Young's Case No. 01–41640–13, only with a copy of the promissory note, Ex. Y–1, attached.

gation to pay collection costs which are incurred prepetition are not affected by the filing of a bankruptcy, except for application of the automatic stay. He stated that debtors in bankruptcy are treated by ECMC the same as it treats borrowers in default who have not filed a bankruptcy petition.

Fisher testified that collection costs are not added to all student loans by ECMC. Collection costs are only added to student loans when they go into default. He explained that "default" is a term of art in the student loan industry, and means that default is not reached until after 270 days of continuous delinquency plus a 60–day notice period, under the current regulation[7]. Fisher testified that he is familiar with each of ECMC's Proofs of Claim filed in these four cases, and that all the collection costs shown on ECMC's claims were added and assessed prepetition, and that therefore each of the student loan debtors had to have been in default for at least one day prepetition.

Fisher testified that ECMC is mandated by 20 U.S.C. § 1091a to assess collection costs, and that the Secretary of Education has mandated the manner in which ECMC assesses collection costs at 34 C.F.R. § 682.410(b)(2). Fisher testified that after the 60–day notice period, ECMC is obligated to assess collection costs as prescribed in 34 CFR § 30.60, which sets forth a formula approach. He testified that ECMC also is obligated to assess collection costs by its charter with the Secretary of Education known as the Reinsurance Agreement under the Higher Education Act, which requires ECMC to follow all applicable laws and regulation or risk losing its reinsurance from the DOE.

Fisher testified that the DOE has taken the position that it is more efficient for guaranty agencies to assess a percentage-based collection costs instead of keeping track of every time they send a letter to a debtor. He testified that the Secretary of Education has determined that tracking costs of collection of each defaulted loan would create too onerous of a system, that such a level of specificity would be untenable, inefficient, and that such detailed record keeping would result in far higher collection costs for debtors than percentage-based collection costs.

Fisher testified that each dollar recovered by ECMC from defaulted student loans is divided between ECMC's operating fund ($.24) and the reserve fund of the federal government ($.76). The amounts in the reserve fund are remitted on a regular basis back to the Secretary of Education to fund additional student loans.

Fisher testified that the DOE presently has about $12 billion in outstanding defaulted student loans. DOE competitively bids out defaulted student loans to private collection agencies for collection. Fisher testified that the DOE has set the market for contracting out collection to private collection agencies at a rate of twenty five percent (25%), which he testified is the ceiling under the regulations at § 30.60 against which all other guaranty agencies are capped. Fisher testified that the 25% set by the DOE is the ceiling, and ECMC has to come up with its own percentage based collection costs based on its actual expenses, which cannot exceed the DOE's own 25% ceiling. He testified that ECMC's collection costs currently are assessed at less than the DOE's regulatory ceiling.

Fisher explained the process which ECMC uses. At the end of each fiscal year ECMC is audited by Ernst & Young,

---

**7.** The default periods have changed over the years, and some of the periods on the promissory notes in evidence which were signed years ago are different.

which audits its numbers for specified areas of ECMC's operations that are involved in the collection of defaulted student loans. Thus, 100% of the in-house collection costs of the cost centers consisting of ECMC's Collections Department, Collections Support Department, and Agency Relations go into the equation, because all of their tasks support the collection of defaulted student loans. In addition, specified percentages are taken of the cost centers of other departments such as Merge Transfer, Human Resources, Finance Department, and other cost centers, according to the percentage of each department which directly supports the collection of defaulted student loans. These percentages are place in a spreadsheet according to a mathematic equation found at 34 CFR § 30.60. Fisher testified that the result is the "collection cost percentage", which is applied the beginning of each calendar year on January 1. On cross examination Fisher testified that the same collection cost percentage is applied to every loan that is in default, and that no individual time records are kept of ECMC's personnel.

Fisher testified that no legal fees or attorney fees are included in the collection costs assessed by ECMC under the above formula, and further testified specifically that no attorney fees or other professional fees, and no penalties, were included in ECMC's Proofs of Claim filed in the instant four Chapter 13 cases. This evidence is uncontroverted. Fisher testified that ECMC's attorney fees for its own Legal Department, and for its outside counsel, all are paid out of the Federal Reserve Fund of the Federal Servicing Bureau. No expenses for Fisher's time, his expenses, overhead, or other ECMC inside or outside counsel costs go into the collection cost percentage. Ex. 1, 2 and 3 are spreadsheets of ECMC's analysis of its collection costs based on audited numbers from ECMC's chief financial officer for the period from 10/98 through 3/01. There is no line entry for legal fees or costs [8].

Under cross examination by the Trustee, Fisher explained that the line entry for salaries and benefits on Ex. 1, 2, and 3, are only for ECMC employees who are directly responsible for the collection of defaulted student loans, and that salaries of any employees who do not perform that function are excluded.

Fisher testified that ECMC tracks its collection costs by fiscal year [9], and then applies that percentage the beginning of the subsequent calendar year. Thus, Ex. 1 shows a 15.3% collection cost percentage applied to defaulted student loans in ECMC's portfolio in the succeeding year. Ex. 2 shows a collection cost percentage of 19.07% beginning January of 2001. Fisher testified that the collection expense as a percentage of the total collections is the "CR" or commission rate. He testified that 34 CFR § 30.60 provides the equation, I over (1 minus CR), which gives the percentage that ECMC has to assess against the debtor's account to come up with the collection expense. Fisher testi-

---

**8.** There are line entries under "In-house Collection costs" for salaries and benefits, rent, telephone, depreciation, printing, postage, delivery, office supplies, repairs and maintenance, membership fees and subscriptions, office other, amortization—computer expense, advertising-employee recruiting, speakers and seminars, outside services other, travel, insurance, commission expense (paid to the outside lender to assist consolidation of defaulted student loans), and overhead. Fisher testified that each category of expenses is authorized by 34 CFR § 30.60, which he explained contains a nonexclusive list to which ECMC is authorized to add expenses specifically for the collection of defaulted student loans.

**9.** October 1 through September 30.

fied that this formula is specified by the regulation, and that ECMC is obligated by 20 U.S.C. § 1091a and the regulation 34 CFR § 30.60, and by its reinsurance agreement with the DOE, and that 34 CFR § 682.410(b)(2) requires ECMC as a guaranty agency to assess collection costs whether or not such costs are provided for in the underlying promissory note. Under cross examination, Fisher testified that through the regulations the Secretary of Education has established what collection costs it deems "reasonable" under § 1091a(b)(1).

Fisher testified that ECMC's financial statements and calculations of the percentages of collections costs to be assessed are audited every year, by Ernst & Young or McGladrey & Pullen, and that ECMC reports each year to the DOE the collection costs it assesses. He testified that ECMC must "account for every nickel in the portfolio and we have to report to the Department whether it's a defaulted student loan, whether it's currently in bankruptcy, whether it's undergoing an administrative discharge or disability, or basically, just to account for every nickel that we have."

ECMC admits that it has not filed an application for award of professional fees in these four Chapter 13 cases under F.R.B.P.2016(a).

## DISCUSSION

### I. Contentions of the Parties.

The Trustee clarified during cross examination of Fisher that he objects only to the portion of ECMC's claims described as collection costs, and does not otherwise object to ECMC's four Proofs of Claim. The Trustee asserts that Rule 2016(a) requires the filing of an application for compensation for services or reimbursement of expenses, and that the Rule applies to an application filed by a creditor. He contends that, since all attorney's fees and costs are subject to this Court's approval, Rule 2016(a) applies in these cases and requires ECMC to file an application for reimbursement of its collection costs because it seeks payment of its costs from the Debtors' earnings. The Trustee argues that ECMC's collection costs should be disallowed because of its failure to file a Rule 2016(a) application. He contends that nothing in 20 U.S.C. § 1091a(b)(1) or related regulations allows ECMC to escape the Rule 2016(a) application process if its costs are included in its Proofs of Claim. The Trustee argues that the Court should read Rule 2016 in concert with 20 U.S.C. § 1091a(b)(1) and related regulations. Finally, he contends that judicial determination of the reasonable collection costs is impossible here because ECMC does not keep time records in individual cases. Because of the lack of application and no showing of reasonableness, the Trustee requests that ECMC's collection costs be denied.

ECMC admits that it has not filed any application for approval of its collection costs under F.R.B.P.2016. Fisher explained that ECMC's position is that its collection costs do not include any attorney's or professional fees or any type of professional expenses. ECMC contends that the Trustee relies on 11 U.S.C. § 506(b) case law governing attorney's fees for oversecured creditors which it argues is inapposite, and that Rule 2016 was not intended to apply and does not apply to prepetition collection costs calculated under nonbankruptcy law. ECMC submits that its collection costs are calculated under mandate of federal regulations, with "notice to the whole world", and at a rate less than the DOE charges. ECMC argues that the statute and regulations give it the "right to payment" of its prepetition collection costs as part of its "claim" under 11 U.S.C. § 101(5)(A). ECMC requests

that the Trustee's objections to its Proofs of Claim be denied because he has not met his burden of showing that its collection costs are unreasonable or not in compliance with Bankruptcy Code or Rules[10].

## II. Objections to Claims.

### A. Burden of Proof.

 This Court discussed the applicable law governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont.B.R. 194, 208–09 (Bankr.Mont.2001):

A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir.2000):

A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623

(9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502–22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.

\* \* \* \* \* \*

"If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir. 1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the

---

**10.** ECMC's brief does not pursue its argument raised earlier regarding dischargeability of its claim. A proceeding to determine dischargeability of a debt is an adversary proceeding.

F.R.B.P. 7001(6). The issue of dischargeability is not presently before this Court in accordance with proper procedure, and will not be addressed.

allegations of the proofs of claim themselves." *Lundell,* 223 F.3d at 1039 (quoting *Holm* ). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell,* 223 F.3d at 1039 (quoting *In re Consol. Pioneer,* 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* ("*Lundell* ") was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.,* 278 F.3d 890, 894 (9th Cir.2002).

## B. Analysis.

■ Applying the burden of proof in the instant case, there is no showing that ECMC's Proofs of Claim filed in these four Chapter 13 cases are not filed in accordance with the applicable rules. The Trustee does not object to allowance of the student loan principal and interest components of ECMC's claims, many of which were listed in the Debtors' Schedules. Any missing promissory notes which formed the basis of the Trustee's objections were admitted into evidence as Ex. H–1, S–1, S–2, S–3 and S–4. Moreover, a guaranty agency is required to charge a borrower the collection costs provided in 34 CFR § 682.410(b)(2), whether or not provided for in a borrower's promissory note. Therefore, ECMC's four Proofs of Claim are given *prima facie* effect of their validity and amount by Rule 3001(f), including the collection costs, thereby placing the burden of proof upon the Trustee to come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell,* 223 F.3d at 1039 (quoting *In re Holm,* 931 F.2d at 623); *Eiesland,* 18 Mont.B.R. at 209.

■ "Claim" is broadly defined at 11 U.S.C. § 101(5)(A) as a "right to payment", no matter how remote or contingent. *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2153–54, 115 L.Ed.2d 66 (1991); *Matter of Southmark Corp.,* 88 F.3d 311, 317 (5th Cir.1996). ECMC's claim for collection costs is based upon federal statute. Fisher testified that ECMC was authorized to assess collection costs by federal statute, 20 U.S.C. § 1091a. That section under the Federal Family Education Loan Program provides at subsection (b): "Assessment of costs and other charges. Notwithstanding any provision of State law to the contrary—(1) a borrower who has defaulted on a loan made under this title shall be required to pay, in addition to other charges specified in this title, reasonable collection costs." The Court views § 1091a(1) as giving ECMC a right to payment which is neither remote nor contingent.

The Trustee argues that § 1091a(1) should be read in conjunction with § 506(b) and Rule 2016 to give effect to both statutes and the Rule. The Court declines to analyze ECMC's claims for collection costs under case law construing § 506(b), because that section addresses fees and costs allowed to oversecured creditors. ECMC is not an oversecured creditor in these four cases. Each of its Proofs of Claim assert unsecured claims. Further, the evidence is uncontroverted that ECMC's collection costs in these cases do not include attorney's fees or costs, either for inside counsel or outside counsel.

■ The Court will not look to § 506(b) for general principles either, because § 1091a(b)(1) is a specific statute requiring a student loan borrower who has defaulted to pay reasonable collection costs. Statutory construction canons require that "[w]here both a specific and a general statute address the same subject

matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." *In re Padilla*, 222 F.3d 1184, 1192 (9th Cir. 2000); *In re Khan*, 172 B.R. 613, 624 (Bankr.D.Minn.1994) (citing *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) and *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). Thus, § 1091a(b)(1) takes precedence and this Court applies it rather than § 506(b) in order to give effect to the specific requirement of § 1091a(b)(1) that defaulting student loan borrowers be required to pay collection costs.

ECMC's collection costs required under § 1091a(b)(1) were calculated pursuant to federal regulations promulgated to implement that statutory mandate. A United States District Court wrote:

> Federal regulation requires [Texas Guaranteed Student Loan Corporation] to meet certain requirements in administering the Federal Family Education Loan program ("FFEL"). See 34 C.F.R. § 682.410(b). Among these requirements is the following:
>
> (2) Collection charges. Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, *the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim.* These costs may include, but are not limited to, all attorney's fees, collection agency charges, and court costs. Except as provided in §§ 682.401(b)(27) and 682.405(b)(1)(iv), the amount charged a borrower must equal the lesser of—
>
> (i) The amount the borrower would be charged for the cost of collection

> under the formula in 34 CFR § 30.60; or
>
> (ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education.
>
> 34 C.F.R. § 682.410(b)(2).

*George W. v. U.S. Dept. of Educ.* ("*George W.*"), 149 F.Supp.2d 1195, 1207 (E.D.Cal. 2000) (emphasis in original). The court further observed in a footnote: "What constitutes 'reasonable' costs is not clear. The second sentence of 34 C.F.R. § 682.410(b)(2) imposes no limit on what costs may be included under reasonable costs: 'These costs may include, but are not limited to *all* attorney's fees, collection agency charges, and court costs.' This sentence suggests all costs incurred, if incurred in connection with collecting on a defaulted loan, are reasonable." *George W.*, 149 F.Supp.2d at 1207 n. 6. While this Court may or may not agree with the district court's footnote that there is no limit on what costs may be included, the evidence in the instant case is uncontroverted that ECMC's collection costs do not include any attorney's fees or costs, penalties, or any postpetition professional fees or costs. The issue of attorney's fees and costs is simply not before the Court in the instant cases.

Fisher testified that ECMC calculated its collection costs pursuant to the formula set forth by federal regulations. Again at footnote 8, the district court in *George W.* observed that § 682.410(b)(2) requires that the amount charged a borrower must equal the lesser of the amount the borrower would be charged for the costs of collection under the formula in 34 CFR § 30.60, or the amount the borrower would be charged if the loan was held by DOE. *George W.*, 149 F.Supp.2d at 1208 n. 8. Thus Fisher's testimony, that 34 CFR § 30.60 provides the formula ECMC used

# 398

to allocate its collection costs, is supported by the reasoning in *George W.*

The Trustee offered no expert testimony or other evidence upon which this Court could base a finding that ECMC's calculation of its collection cost percentage, as testified by Fisher, was erroneous. On the contrary, if anything ECMC has not included in its collection costs all it was authorized to include under § 30.60(a). That nonexclusive list specifically includes at § 30.60(a)(8) attorney's fees, which although so authorized to include, ECMC did not include in its collection costs in its Proofs of Claim in these 4 Chapter 13 cases. The Trustee failed to show that ECMC misapplied the formula found at § 30.60(c)(1), which Fisher testified ECMC used and which applies under § 682.410(b)(2)(i).

The Trustee contends that ECMC's collection cost percentage is exorbitant, sometimes exceeding 20%. However, the evidence shows that DOE's ceiling for the collection cost percentage is 25%, and ECMC's collection cost percentages shown by Ex. 1, 2, and 3 are all under the DOE's cap in accordance with § 682.410(b)(2)(ii).

The Trustee argues that ECMC has not filed an application for professional fees for its collection costs. Rule 2016(a), F.R.B.P., and this Court's Mont. LBR 2016-1, require any entity seeking compensation for services or reimbursement of expenses from the estate to file an application with the court, including a creditor. The Trustee argues that ECMC's collection costs must be disallowed because it has not filed an application for collection costs, and further argues that it is impossible to determine reasonable collection costs because ECMC does not keep individual time records. If the Court were to accept the Trustee's argument and disallow ECMC's collection costs based upon Rule 2016(a), it would fail to give effect to

the requirements of 20 U.S.C. § 1091a(b)(1) and 34 CFR §§ 30.60 and 682.410(b)(2) to allow ECMC's prepetition collection costs computed under valid federal statute and regulations.

■ There is a strong presumption that the Bankruptcy Rules do not modify substantive rights. *In re Capobianco,* 248 B.R. 833, 836 (9th Cir. BAP 2000). Bankruptcy Rules are presumptively valid if they are not inconsistent with the statute. *Id., citing Dominguez v. Miller (In re Dominguez),* 51 F.3d 1502, 1507 (9th Cir. 1995). If a Rule is inconsistent with the Code, this Court is privileged to determine the Rule "unenforceable because of and to the extent of any inconsistency with a statute. 28 U.S.C. § 2075; *In re Moralez,* 618 F.2d 76, 6 B.C.D. 518 (9th Cir.1980)." *In re Lane,* 37 B.R. 410, 414 (Bankr.E.D.Va. 1984). This Court declines to disallow ECMC's fees based upon its failure to file Rule 2016(a) applications because it determines such a disallowance would be inconsistent with the statutory requirements of 20 U.S.C. § 1091a(b)(1), and the regulations at 34 CFR §§ 30.60 and 682.410(b)(2), to allow ECMC's prepetition collection costs computed under valid federal statute and regulations.

ECMC's collection costs in its Proofs of Claim in the four instant Chapter 13 cases do not include any attorney's fees or costs. The evidence is uncontroverted that ECMC's collection costs were computed in accordance with applicable federal regulations and include no postpetition fees or costs. The Trustee complains that ECMC keeps no individual time records, but the uncontroverted evidence shows that a system which tracks individual time and expenses for each case would be onerous and result in far higher charges to defaulting student loan debtors.

The Court concludes that the Trustee failed his burden of proof under § 502(a) to show any facts tending to negate the amounts or computations of ECMC's collection costs set forth in its Proofs of Claim in the four instant Chapter 13 cases. The Trustee thus failed to show facts tending to defeat ECMC's claims for collection costs by probative force equal to that of the allegations in ECMC's Proofs of Claim themselves, and therefore failed to overcome such claims' *prima facie* effect and shift the burden of proof to ECMC. *Lundell*, 223 F.3d at 1039 (quoting *In re Holm*, 931 F.2d at 623); *Eiesland*, 18 Mont.B.R. at 209.

IT IS ORDERED a separate Order shall be entered overruling the Trustee's objections to ECMC's Proofs of Claim filed in the four above-captioned Chapter 13 bankruptcy cases.