**In re Lisa S. LOVING, Debtor.**

No. 92–06933–JKC–13.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Nov. 19, 2001.

Edward M. King, Brown Todd & Heyburn, Louisville, KY, for Creditor–Objector.

Hugh Riedeman, Greenwood, IN, for Debtor.

### MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO ENFORCE DISCHARGE

JAMES K. COACHYS, Bankruptcy Judge.

This matter comes before the Court on Debtor Lisa S. Loving's (the "Debtor" or "Loving") Motion to Enforce Discharge (the "Motion") against Education Credit Management Corporation ("ECMC"). Following a hearing on November 6, 2001, the Court took the matter under advisement and now enters the following Memorandum Decision. For reasons stated below, the Court must deny Loving's Motion.

#### Facts and Procedural History

Between 1985 and 1987, Loving obtained three loans from the Higher Education Assistance Fund ("HEAF") in the following amounts: $5,000 (the "First Loan"), $3,000 (the "Second Loan") and $3,756 (the "Third Loan") (collectively, the "Loans"). On July 1, 1992, Loving initiated a case under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Code"). In her petition, Loving listed three unsecured debts to the "Higher Education Assist [sic] Foundation c/o Collection Technology, Inc." in the total

amount of $17,600. She eventually proposed a Chapter 13 plan which provided the following:

    c. Subsequent to (or pro rata with) dividends to secured creditors, dividends to unsecured creditors whose claims are duly proved and allowed as follows: Student Loans: (Kansas = 5100.00, Knight = 1500.00, State Student Asst. = 2350.00), HEAF/CTI = 2 loans = 12,500.00, Rest at 10%.

The plan, which provided for sixty monthly payments of $105.92 [1], was confirmed without objection on August 21, 1992.

Loving eventually completed all of her payments and, on August 7, 1997, the Court entered an Order Discharging Debtor After Completion of Chapter 13 Plan. That Order specified that debts "for student loan or education benefit overpayment as specified in 11 U.S.C. § 523(a)(8)" were excepted from discharge. Ultimately, Loving paid $28,024.08 into her plan, and ECMC received a dividend of $15,450.68, which it applied first to collection costs, second to pre- and post-petition interest, and third to principal.

In February of 2001, ECMC informed Loving that she still owed over $10,000 on the Loans, consisting of interest, collection costs and principal. Thereafter, the Debtor moved to reopen the case and to enforce the discharge injunction set forth in § 524 of the Code. After reopening the case, the Court conducted an initial hearing on September 5, 2001, at which time the Court ordered the parties to file pre-hearing briefs by November 1, 2001. The Court conducted another hearing on November 6, 2001, at the conclusion of which it took the matter under advisement. After reviewing the parties' briefs and other submissions, as well as other relevant authorities, the Court must conclude that any amounts that remain unpaid by Loving to ECMC were not discharged in her bankruptcy case.

### Discussion and Decision

According to § 524(a)(2) of the Code, a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such debt is waived." Here, Loving generally argues that the discharge she received under § 1328 of the Code, following satisfaction of her confirmed plan, bars ECMC from collecting any remaining balance due on the Loans. She raises a series of specific contentions in support of this argument, which the Court will discuss in turn.

In response to Loving's argument, ECMC raises two preliminary challenges that the Court will deal with as an initial matter. First, ECMC argues that the Court lacks subject matter jurisdiction over the Debtor's motion to enforce the discharge injunction. Rather, ECMC argues that Loving must proceed in state court with a declaratory action. The Court disagrees.

■ A substantial number of courts have exercised jurisdiction over actions to enforce the discharge injunction provided by § 524. *See, e.g., Goldberg v. Ellett (In re Ellett)*, 254 F.3d 1135 (9th Cir.2001); *Insurance Co of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir.1997); *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP, (In re Pavelich)*, 229 B.R. 777 (9th Cir. BAP 1999); *Boone v. I.S.S.C. (In re Boone)*, 215 B.R. 386 (Bankr.S.D.Ill.

---

1. This amount was later increased to $108     per the Court's Confirmation Order.

1997). The basis for this jurisdiction has been articulated in one of several ways, but this Court finds the Fifth Circuit's explanation to be particularly compelling:

> Courts have held that actions to enforce discharge injunction[s] are core proceedings because they call upon a bankruptcy court to construe and enforce its own orders. *In re Polysat,* 152 B.R. 886, 888 (Bankr.E.D.Pa.1993) ("As the instant proceedings concerns the scope of the discharge injunction arising from section 524 and 1141 of the Code, it is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), or (O)."); *In re Jacobs,* 149 B.R. 983, 989 (Bankr.N.D.Okla. 1993) ("An action before the Court which issued a discharge, for the purpose of determining the scope of said discharge under 11 U.S.C. § 524 ... is not merely related to the bankruptcy, but arises under Title 11, and arises in a case under Title 11, is a 'proceeding ... affecting ... the adjustment of the debtor-creditor relationship' and is therefore a core proceeding under 28 U.S.C. 157(b)(2)(O); *cf.* 4 *Collier on Bankruptcy* ¶ 524.02[2][c], at 524–18)" A proceeding to enforce the discharge injunction is a core proceeding under section 157(b)(2)(O) of title 28, and courts should readily reopen a closed bankruptcy case to ensure that the essential purposes of discharge are not undermined.

*National Gypsum,* 118 F.3d at 1063. Given the ample support to be found in both bankruptcy case law and commentary, the Court rejects ECMC's argument that it lacks jurisdiction over this matter.

■ Second, ECMC argues that the form of debtor's requested relief is procedurally defective under Bankruptcy Rule 7001(6), which provides that "a proceeding to determine the dischargeability of a debt" must be filed as an adversary proceeding. The Court admits that several subsections of Rule 7001, including Rule 7001(6), suggest several ways in which a request to enforce the discharge injunction *could* be brought; however, the Court finds no authority under Rule 7001 for ECMC's contention that it *must* be brought via an adversary proceeding.

The bankruptcy court in *In re Texaco,* 182 B.R. 937, 945 (Bankr.S.D.N.Y.1995), in rejecting a similar argument as the one posited by ECMC, stated the following:

> Respondents have cited no case holding that a debtor must utilize an adversary proceeding to enforce a discharge under § 524, relying instead on quotations from Collier on Bankruptcy (15th ed.), ¶ 4007.07 at p. 4007–21, ¶ 7001.09 at p. 7001–22, which are directed at dischargeability actions under section 523. The portions of Bankruptcy Rule 7001 relied on by Respondents, subsections (1), (6), (7) and (9) do not support their argument. Subsection (1) refers to a proceeding "to recover money or property," which Texaco's motion does not seek to do. Subsection (6) is "to determine the dischargeability of a debt," and concededly this refers to a proceeding under section 523 concerning exceptions to discharge. This is not a proceeding under section 523 to determine whether debts or claims should be excepted from the discharge; it is a motion to enforce the discharge granted to Texaco under section 524. Respondents argue that " .... there is no reason to treat an action seeking to declare the ambit of a section 524 discharge any differently" (Resp. Mem. at 12). That assertion is debatable, but moot, because Rule 7001 simply does not provide that a motion to enforce must be brought by adversary proceeding. So also with subsection (7) "to obtain an injunction or other equitable relief" and subsection (9) "to obtain a declaratory judgment relating to any of

the foregoing." Texaco's position on this motion is that it already has the injunctive relief necessary in the form of the relevant provisions of the Plan and section 524, which it simply asks this Court to enforce, and to the extent that the Court is required to declare the rights of the parties it is because Respondents have raised issues as to those rights, not because Texaco seeks a declaratory judgment in its motion."

The court in *Texaco* further notes that case law supports the use of a motion to enforce a discharge under 11 U.S.C. § 524. *See id.* (citing *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1195 (7th Cir.1993); *In re Ionosphere Clubs, Inc.*, 171 B.R. 18 (S.D.N.Y.1994); *In re Kiker*, 98 B.R. 103, 103–04 (Bankr. N.D.Ga.1988); *In re Hooker Inv., Inc.*, 116 B.R. 375, 378 (Bankr.S.D.N.Y.1990)).

This Court agrees that there is no one "right" way to seek enforcement of the discharge injunction. Without any clear guide under either the Code, the Bankruptcy Rules or prior case law, the Court is not inclined to find Loving's Motion to be procedurally defective. While ECMC stated that it did not receive the "protections" that would be afforded via an adversary proceeding, it did not point to any specific prejudice that it suffered due to the procedural posture of this case. Based on the foregoing, the Court denies

ECMC's request to dismiss Loving's Motion on this basis.

## I.

In support of her Motion, the debtor first contends that, according to law in effect at the time she filed her bankruptcy petition on July 1, 1992 (the "Petition Date"), she was entitled to a discharge of her entire debt to ECMC upon completion of her plan payments, regardless of whether the plan provided for full payment of the debt. ECMC responds that the law in effect as of August 7, 1997–the date the Court granted Loving a discharge-controls whether her debt to ECMC was discharged. To understand these arguments, some legislative history with respect to the treatment of student loans under the Code is necessary.

Prior to 1990, those student loans that were nondischargeable in a Chapter 7 case under § 523(a)(8) were dischargeable in a Chapter 13 case, assuming that the plan was proposed in good faith and that all payments under the plan were made. *See* THE HONORABLE KEITH M. LUNDIN, *Chapter 13 Bankruptcy*, § 346–1 (3d ed.2000). In 1990, however, Congress amended § 1328(a)(2) of the Code to render those types of loans described in § 523(a)(8) [2] nondischargeable, even upon completion of the plan payments. *See* Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–

---

**2.** In 1990, § 523(a)(8) went through a flurry of changes itself; however, as of November 29, 1990, the section provided:

(a) A discharge .... does not discharge an individual from any debt—
(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

In 1998, the section was amended again to eliminate the 7–year "reachback" period for those cases filed after October 7, 1998. *See* Higher Education Act of 1998, Pub.L. No. 105–244, 112 Stat. 1581 (Oct. 7, 1998).

508, § 3007(b), 104 Stat. 1388 (Nov. 5, 1990).

Congress further specified that the amendment was only to apply to those cases commenced after November 5, 1990. *Id.* at § 3007(b)(2). The legislation also contained a "sunset provision" which provided that the amendment to § 1328(a)(2) would expire on October 1, 1996. *Id.* at § 3008. In other words, § 1328(a)(2) would eventually revert back to its pre-amendment status. However, on July 23, 1992, Congress repealed the sunset provision effective October 1, 1992. *See* Higher Education Amendment of 1992, Pub.L. No. 102–325102–325, §§ 2 and 1558, 106 Stat 448 (July 23, 1992). Nevertheless, Loving maintains that she should enjoy the benefits of the sunset provision, i.e., the discharge of her debt to ECMC, because the provision had not yet been repealed as of the Petition Date. The Court disagrees with Loving's assumption that the sunset provision substantively defined the effect

of a Chapter 13 discharge simply by being included in the 1990 amendment.[3]

When Congress amended § 1328(a)(2) to eliminate the dischargeability of those student loans described in § 523(a)(8), it explicitly stated that the amendment was to apply only to cases filed after November 5, 1990. Per the sunset provision, Congress further provided[4] that the amendment was to expire, i.e., that the superdischarge be reinstated, on October 1, 1996. According to Loving's argument, only those cases both *filed and discharged* before October 1, 1996, would be adversely affected by the amendment to § 1328(a). However, if Congress had intended such a result, it would have explicitly stated so. The more logical interpretation is that Congress intended the amendment to § 1328(a)(2) to apply to *any* case filed between November 5, 1990, and October 1, 1996, regardless of when the debtor became eligible for discharge. Any other interpretation simply leads to confusing and inconsistent results.[5]

---

**3.** Given the Court's conclusion that the law, even as of the Petition Date, did not provide for the discharge of Loving's student loan debt, the Court need not decide which law, i.e., as of the petition date or the discharge date, generally governs the extent and effect of discharge.

**4.** Whether Congress truly intended expiration of the amendment to § 1328 is debatable. In his treatise on Chapter 13, Judge Lundin states:

The subtitle that contains the [1990] amendment adding § 523(a)(8) to the exceptions to discharge in § 1328(a)(2) is titled "Student Loan Default Prevention Initiative Act of 1990." This subtitle contains many sections dealing with the administration of the Higher Education Act of 1965. It is plausible that the sunset provision was targeted at these other sections.

LUNDIN, *supra*, § 346–2 n. 10.

**5.** Under Loving's interpretation of the amendment, the sunset provision had a "floating" effect on the discharge of student loans depending on the length and completion date of

the plan. From the effective date of the amendment to roughly October 1, 1991, all debtors would have been subject to the § 523(a)(8) standard for discharging a student loan regardless of plan length and completion date. From October, 1991 to October, 1993, only those debtors whose plans called for discharge prior to October 1, 1996, would be held to the stricter dischargeability standard provided by § 523(a)(8). Finally, after October of 1993, presumably all cases (since a plan must last at least 36 months) would complete after October 1, 1996, and therefore enjoy the benefit of the more lenient dischargeability standard for student loans in effect prior to the 1990 amendments. All of this is further complicated by the fact that many plans get extended or shortened during the life of the plan, making it almost impossible for a student loan creditor to determine which version of § 1328 would ultimately apply and to protect its rights accordingly. The Court cannot conclude that Congress intended such a result.

## II.

Next, Loving argues that the principle of *res judicata* bars ECMC from demanding or collecting additional amounts from her for the Loans. In support of this argument, Loving maintains that her Chapter 13 plan provided that her Loans to ECMC would be "paid in full." Loving further maintains that ECMC, in failing to object to this treatment, is now precluded from arguing that the Loans were not discharged upon completion of the plan payments. The Court disagrees that the Debtor's plan contained any language that bars ECMC from demanding and collecting the amounts that remain due under the Loans.

Under current law, a nondischargeable student loan debt continues to accrue interest through the life of the plan, rendering it virtually inevitable that a balance will remain due following completion of the plan. As a general rule, the debtor remains personally liable for any remaining balance following discharge. *See Boone*, 215 B.R. at 386 (post-petition interest continues to accrue on nondischargeable student loan debt during life of Chapter 13 plan even if plan provides for the full payment of creditor's pre-petition claim). This general rule is not without exception, however. For example, in *In re Pardee*, 193 F.3d 1083 (9th Cir.1999), a student loan creditor sought to recover post-petition interest from the debtors following their Chapter 13 discharge. The debtors moved to enforce the discharge, arguing that their plan had specifically provided, without objection by the creditor, for the discharge of any remaining balance, including interest.[6] Notwithstanding the fact that such a provision was improper under the Code, the 9th Circuit held that the creditor had waived it rights either to collect post-petition interest or collaterally attack the plan as being contrary to the Code. *Id.* at 1084–85. *See also, Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1257 (10th Cir.1999) (creditor bound by language included in plan that balance of student loans were discharged following completion of the plan and that excepting of loans from discharge would constitute undue hardship on debtor where creditor failed to object to or appeal from confirmed plan). Thus, consistent with Loving's argument, case law indicates that a student loan creditor who fails to object to or appeal from a confirmed plan-even one that is contrary to the Code-will be bound by the terms of that plan.

The present case, however, is inapposite to both *Pardee* and *Andersen*. Unlike the plans in those cases, Loving's plan did not explicitly provide for the full payment or discharge of her debtor any component thereof-to ECMC. While the Debtor alleges that several documents, including the plan, confirmation order and claims allowance, called for "payment in full" to ECMC, none of these documents contained any such language. Rather, the plan merely provided for the payment of $12,500 in claims to HEAF (ECMC's predecessor-in-interest), without explicit reference to whether this treatment was intended to discharge the debt. As such, the Court disagrees that the plan has any preclusive effect on ECMC.

## III.

On a related argument, Loving argues that ECMC's ongoing claim against Loving should be, in the very least, re-

---

**6.** Pardee's plan provided explicitly provided that "Great Lakes Higher Education shall receive the total amount of $23,235.00 for its claim and any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the Plan." *Id.* at 1086, n. 5.

duced because HEAF, as ECMC's predecessor, apparently failed to file a proof of claim on the Second Loan. Loving maintains that any amounts attributable to that Loan should be discharged. Again, the Court must disagree.

HEAF apparently filed only two claims in this case, one for $7,664.17 on the First Loan and another for $4,921.50 for the Third Loan. It is unclear whether HEAF actually filed a claim for the Second Loan since no such claim appears in the Court's claim register.[7] However, the fact that ECMC did not file a claim for the Second Loan, or object to either the plan or to the Trustee's Claim Allowance is irrelevant in determining whether the balance due under the Loans, or any portion thereof, has been discharged.

■ Neither the bankruptcy rules nor the proof of claim bar date prevents a creditor holding a nondischargeable debt who has not filed a proof of claim from collecting outside of bankruptcy. *See In re Olsen*, 123 B.R. 312, 314 (Bankr.N.D.Ill. 1991)("the IRS's nondischargeable claim ... would survive bankruptcy even if the IRS had never even filed a proof of claim"); *Kinney v. IRS (In re Kinney)*, 123 B.R. 889, 891 (Bankr.D.Nev. 1991)("[t]he IRS's failure to file timely a proof of claim would, at most, result in a

loss of the right to payment under the plan"); *In re Howell*, 84 B.R. 834, 836 (Bankr.M.D.Fla.1988)("a creditor holding a nondischargeable debt ... may execute or collect on the balance of its nondischargeable debt without regard to the discharge provisions of the plan or the Code"). Failure to file a proof of claim simply precludes a creditor from participating in the voting or distribution from the debtor's estate. *See* Bankruptcy Rule 3003(c)(2). Thus, while ECMC cannot now object to the amount it received by way of distribution under Loving's plan, it is not barred from collecting the balance due under the Loans.

## IV.

■ The Debtor next argues that the doctrines of laches or equitable estoppel bar ECMC's attempt to collect any additional amounts from her. Specifically, she claims that ECMC inequitably waited almost four years before attempting to collect the balance due after she received her discharge. In that time, the amount due has presumably increased substantially. In response, ECMC insists that there is no time limit to collect the balance due. While the Court sympathizes with Loving in this regard,[8] the Court is compelled to agree with ECMC based on controlling law.

---

7. However, in its brief, ECMC attached a claim for the Second Loan in the amount of $6,237.30. The copy of this claim is not file-stamped, but it was prepared by HEAF and is dated July 29, 1992. Attached to the claim is an undated letter from HEAF to the Clerk of the Bankruptcy Court. The Trustee's Claims Allowance is not particularly helpful in this regard. It lists three claims for ECMC in the following amounts: $7,664.17 for the First Loan; for $4921.50 for the Third Loan; and "2,361.48 plus 9% interest" apparently for the Second Loan. Given that no claim appears to be on file for the Second Loan, it is unclear how the Trustee arrived at this figure.

8. As the discussion issue indicates, under federal law, ECMC can apparently pursue a borrower for a delinquent student loan at any time, no matter how inequitable it may be. While the Court's hands are tied in this instance, it nevertheless expresses its dismay that ECMC waited so long to collect the balance due under the Loans from Loving. Ironically, it appears that Loving herself contacted ECMC about an $84.00 balance that had appeared on her credit report, only to be informed some time later that the balance was over $10,000. In defense of its delay, ECMC explained that it never received notice of the Court's discharge order. After reviewing the record, however, it does not appear that ECMC ever informed the Court (as opposed

By virtue of 20 U.S.C. § 1091a, Congress has eliminated any time constraint on the United States' (or a guaranty agency) collection of student loan obligations. That provision states in relevant part:

(1) It is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which debts may be enforced.

(2) Notwithstanding any other provision of statute, regulation, or administrative limitation, no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken by—

\*   \*   \*   \*   \*   \*

(B) a guaranty agency that has an agreement with the Secretary under section 1078(c) of this title that is seeking the repayment of the amount due from a borrower on a loan made under part B of this subchapter after such guaranty agency reimburses the previous holder of the loan for its loss on account of the default of the borrower. . . .

20 U.S.C. § 1091(a)(2)(B). As a guarantor of the Loans,[9] ECMC is not subject to any statute of limitations or equitable doctrine in pursuing Loving for the balance due under the Loans. As such, the Court cannot conclude that ECMC is barred, pursuant to either laches or equitable estoppel, from pursuing Loving for the amounts due under the Loans.

to the Trustee) that the Loans had been assigned by the United States Department of Education to ECMC. Without this information, the Court had no reason to distribute its orders to ECMC.

## V.

■ Finally, Loving asks that the Court discharge the balance of the Loans now due ECMC based on § 523(a)(8)'s concept of "undue hardship." An action under § 523(a)(8) must be initiated via an adversary proceeding under Bankruptcy Rule 7001(6). If and when Loving files such an action, the Court will consider her argument that repayment of the remaining balance constitutes an undue hardship for her or her dependents.

■ In any event, Loving failed to set forth any evidence tending to establish the requirements of undue hardship. *See In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (to satisfy undue burden test, debtor must show by a preponderance of the evidence that (1) she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself or her dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for the student loans; and (3) the debtor has made good faith efforts to repay the loans). While the Court will not bar the Debtor from presenting such evidence should she initiate a proceeding under § 523(a)(8), she has not carried her burden of proof at this time.

### Conclusion

For the reasons stated herein, the Court must conclude that Loving's obligations to ECMC, consisting of any unpaid costs and fees, interest, and principal, were not discharged by virtue of her completed Chap-

9. ECMC did not introduce evidence that it has "an agreement with the Secretary under section 1087c or 1087cc(a);" however, Loving did not object to ECMC's statement that it qualifies as a student loan guarantor and, thus, any argument to the contrary has been waived.

ter 13 plan. As of either the Petition Date or her Discharge Date, Loving was not entitled to any benefit under the sunset provision originally contained in the 1990 amendment to Code § 1328. Loving's Chapter 13 plan does not preclude ECMC from demanding or collecting any amounts not paid under her plan. Nor is ECMC prejudiced by the fact that its predecessor-in-interest apparently did not file a proof of claim for the Second Loan. In addition, ECMC is not barred from collecting the unpaid balance from Loving by either laches or equitable estoppel. Finally, on both procedural and substantive grounds, Loving has failed to show that she is entitled to a finding that repayment of the Loans will result in an undue hardship to her or her dependents. Accordingly, the Court must deny Loving's Motion to Enforce Discharge against ECMC.

The Court will issue an Order consistent with this memorandum decision.