In re Nathaniel/Lillian BROWN, Robin/Lori Rea, Jesse/Gwendolyn Staley, Felissa Parker, Debtors.

Nos. 02–30697, 02–35307, 02–37636, 03–30707.

United States Bankruptcy Court, N.D. Ohio.

Jan. 15, 2004.

Elliot H. Feit, Gordon R. Barry, Toledo, OH, for Debtors.

John P. Gustafson, Toledo, OH, for Trustee.

### *DECISION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

Now before this Court are the objections to claims filed in four separate Chapter 13 cases: Nathaniel and Lillian Brown; Robin and Lori Rea; Jesse and Gwendolyn Staley; and Felissa Parker. Each of the objections was filed in response to a proof of claim submitted by Educational Credit Management Corporation, an assignee of various prepetition, government-guaranteed student loans taken out by the Debtors. Although minor factual differences exist in each case, the issue raised by way of each of the objections filed by the Debtors was the same: the extent to which collection costs may be allowed as part of a proof of claim filed by a student-loan creditor. Based upon this identity of issue, together with the need to avoid unnecessary costs and delay, these actions were consolidated pursuant to Federal Rule of Civil Procedure 42(a), made applicable to this proceeding by Bankruptcy Rule 7042.

### DISCUSSION

 Whether in a liquidating Chapter 7 bankruptcy or pursuant to a plan of reorganization, only those creditors holding "allowed" claims are entitled to a distribution of estate assets. *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir. 1994); *In re Michels*, 270 B.R. 737 (Bankr. N.D.Iowa 2001). In order to hold an "allowed" claim, a creditor must normally file a proof of claim. Once filed, § 502(a) deems the claim "allowed" unless a party in interest objects. Also, as an evidentiary matter, Bankruptcy Rule 3001(f) provides that a properly filed and executed claim "constitute[s] prima facie evidence of the validity and amount of the claim."

 If an objection is made, § 502(b) directs that a bankruptcy court is to "determine the amount of such claim ... as of the date of the filing of the [bankruptcy] petition ..." As used here, the Bankruptcy Code defines the word "claim" so as to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5). This definition, as is evident from the language, is meant to be very broad so as to further the bankruptcy policy that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir.2000). It therefore follows that collection costs, even if not yet assessed, are within the scope of a "claim" in bankruptcy. *In re Schlehr*, 290 B.R. 387, 395–96 (Bankr. D.Mont.2003).

Paragraph (b) of § 502, however, sets forth certain categories of claims which, although constituting a "claim" within the meaning of bankruptcy law, are not al-

lowed, and therefore, are not entitled to a distribution of estate assets. Of the potential categories of disallowance, the Debtors' position centers on the exception set forth in subparagraph (1) of § 502(b) which provides that a "claim" is not allowed when "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . ."

■ Federal law—20 U.S.C. § 1091a(b)—mandates that collection costs be assessed against student-loan borrowers, such as the Debtors, who are in default. As it pertains thereto, the facts presented in this case show that collection costs were assessed against the Debtors as follows:

Nathaniel Brown: $823.63, on a total student-loan claim, inclusive of collection costs, of $4,188.55;

Gwendolyn Staley: $496.66, on a total student-loan claim, inclusive of collection costs, of $2,525.52;

Lori Rea: $1,572.78, on a total student-loan claim, inclusive of collection costs, of $6,545.19;

Felissa Parker: $958.62, on a total student-loan claim, inclusive of collection costs, of $3,977.09

As for the actual amounts assessed as collection costs, ECMC relies on the authority set forth in 34 C.F.R. § 682.410, where, under paragraph (b)(2) of the regulation, it is provided:

Collection charges. Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim. These costs may include, but are not limited to, all attorney's fees, collection agency charges, and court costs. Except as provided in § 682.401(b)(27) and § 682.405(b)(1)(iv), the amount charged a borrower must equal the lesser of—

(i) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or

(ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education.

(ECMC's Response, at pg. 6).

As applied here, the Debtors do not dispute ECMC's statutory authority to impose collection costs under 20 U.S.C. § 1091a(b); nor do the Debtors disagree that, in obtaining their educational loans, they agreed (at least tacitly) to be liable for any collection costs assessed on the account of a default. Instead, the Debtors argue that, contrary to the specific requirement of the above regulation, the collection charges assessed by ECMC were not reasonable and thus, pursuant to § 502(b)(1), are not allowed by applicable law. (Debtors' Memorandum in Support, pg. 3).

As is commonly the case, the word "reasonable" as used in 34 C.F.R. § 682.410 is a foundational word, and is therefore not defined by the regulation. Nevertheless, in this particular context, a few general statements can be made. First and foremost, the regulation itself establishes outside boundaries as to what reasonable collections costs may include. On the one side, reasonable collection costs may include, but are not limited to all attorney fees, collection agency charges and court costs. Conversely, such costs may not exceed the lesser of the amounts set forth in either subparagraph (i) or (ii), which apply when the loan is held by the government, and not, as is the situation here, by a

private guaranty agency. *In re Schlehr,* 290 B.R. at 397.

██ Second, and in accord with basic principles of equity, the reasonableness of collection charges in general must be made on a case-by-case basis, looking mainly to factors such as the amount of the debt, and the necessary time and energy the creditor expended in order to collect the debt. Finally, when interpreting a regulation, a court must defer to the agency's application of its own regulation unless an alternative reading is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation. *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994).

Based upon these parameters, the Court, while agreeing that the collection costs imposed by ECMC are to some extent large in proportion to the underlying debt, is not of the opinion that such costs are facially unreasonable. This is especially true considering that student loans are made on an unsecured basis, usually without regard to credit history, leaving the creditor with only the potential future earning ability of the debtor to repay the debt. *Boylen v. First National Bank of Akron and Ohio Student Loan Commission (In re Boylen),* 29 B.R. 924, 926 (Bankr.N.D.Ohio 1983). The difficulty here is that beyond their bare allegations, the Debtors have not offered any evidence tending to establish the unreasonableness of ECMC's collection charges. To explain this lack of evidence, however, the Debtors point to ECMC's failure to provide them with a proper accounting. Specifically, in their brief submitted to the Court, it was stated that "Debtors are not at this time in

a position to state how the amount of the fees and costs were arrived at, because ECMC objected to this line of questioning in the interrogatories submitted by the Debtors." (Debtors' Memorandum in Support, at pg. 2).

██ Rule 26, of the Federal Rules of Civil Procedure, mandates that a party disclose how its damages were calculated by providing, in part:

(a) Required Disclosures; Methods to Discover Additional Matter.

(1) ... a party must, without awaiting a discovery request, provide to other parties:

(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered[.]

This Rule is applicable to this proceeding pursuant to Bankruptcy Rules 7026 and 9014.[1] Thus, to the extent that ECMC has not disclosed to the Debtors the documentation or other pertinent information that was used to formulate the amount of their collection costs under 34 C.F.R. § 682.410(b)(2), such information has been wrongfully withheld. As such, ECMC's claims for collection costs will only be allowed to the extent that the information requested by the Debtors is provided. *See* F.R.C.P. 37(b)(2).

In addition, the Debtors also put forth that, while again not yet having all the proper documentation, it appears that

---

**1.** Objections to claims are deemed "contested matters" in bankruptcy. *Poonja v. Alleghany Props. (In re Los Gatos Lodge, Inc.),* 278 F.3d 890, 894 (9th Cir.2002). Bankruptcy Rule 9014 governs contested matters and provides that Bankruptcy Rule 7026 is applicable.

ECMC assessed it collection cost against the Debtors after they had already filed for Chapter 13 relief. Along this same line, the Debtors contend that the assignment of the Debtors' claims was a postpetition event. As explained below, these concerns, contrary to the position taken by ECMC, are valid. Consequently, like the point previously raised by the Debtors, ECMC's claims for collection costs will only be allowed to the extent that the information needed by the Debtors is timely provided.

 A basic goal of the Bankruptcy Code is to treat all similarly situated creditors equally. *In re CSC Industries, Inc.,* 232 F.3d 505, 508 (6th Cir.2000). Thus, once a bankruptcy petition is filed, creditors are generally not permitted to improve their position at the expense of another creditor. To prevent creditors from improving their position, § 502(b) freezes, at least from a distribution standpoint, the amount of a creditor's "allowed claim" to "the amount of such claim as of the date of the filing of the petition . . . [.]" In essence then, while a simple "claim" in bankruptcy is afforded a very broad reach, the language of § 502(b) limits a creditor's recovery from estate assets to the amount that the creditor would have otherwise been entitled to receive at the time the debtor filed for bankruptcy.

Taken then to its logical conclusion, collection costs not yet imposed at the time the debtor files for bankruptcy, while still a "claim," do not constitute an "allowed claim," and thus are not entitled to a distribution of estate assets. In the context of "allowed claims" under § 502(b), a well-established analogy is unaccrued, postpetition interest which, subject to a couple of very limited exceptions, is not compensable from estate property. 11 U.S.C. § 502(b)(2) (disallowing claim for unmatured interest); *In re ICH Corp.,* 230 B.R.

88, 93–94 (N.D.Tex.1999); *El Paso Refining, Inc. v. IRS,* 205 B.R. 497 (W.D.Tex. 1996). *But see* 11 U.S.C. § 506(b) (permitting the accrual and payment of postpetition interest by an oversecured creditor to the extent of the value of the collateral); 11 U.S.C. § 726(a)(5) (allowing unsecured creditors postpetition interest if the debtor is solvent).

In addition, the mere fact, as ECMC argues, that a student-loan obligation is a nondischargeable debt under § 523(a)(8) does not change this result. This is because dischargeability issues and claims allowance matters are two separate and distinct concepts. *Tustin Thrift & Loan Ass'n v. Maldonado (In re Maldonado),* 228 B.R. 735, 739 (9th Cir. BAP 1999). As was explained *in Gable v. Educational Credit Management Corp. (In re Gable),* a case to which ECMC was recently a party:

> The fact that the principal amount of ECMC's claim has been paid does not serve to discharge the debt or the interest that accrued on it after the commencement of the case. Repayment of a claim allowed under § 502 is not identical to repayment of a debt. Section 502 speaks to the allowance of claims while § 523 excepts debts from discharge. Indeed, the post-petition accrued interest could not have been part of the allowed claim of ECMC because § 502(b)(2) excepts unmatured interest from an allowed claim. Section 101(12) defines debt as a liability on a claim. A claim is defined as a right to payment, whether matured or unmatured. Because unmatured interest cannot be part of an allowed claim under § 502(b)(2), Gables's payment of the allowed claim could not have satisfied ECMC's debt that is excepted from discharge. As the [Supreme Court in *Bruning v. United States*] stated, 'interest is considered to be the cost of the use of the amounts

owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt.' Thus, the debt remaining at the close of the case, consisting of post petition interest and penalties, was expressly excepted from discharge under § 523(a)(8) and the language of the discharge order.

2003 WL 21750872 *4 (Bankr.D.Kan.2003). To understand this reasoning from a policy standpoint, one must consider that the claim allowance process is guided by the principle of fairly allocating a debtor's assets among the unsecured creditors, a concern which has no applicability in the context where the dischargeability of a debt is at issue. *In re Shelbayah,* 165 B.R. 332 (Bankr.N.D.Ga.1994).

Therefore to the extent that ECMC's collection costs were assessed postpetition, they cannot be satisfied through any of the plans of reorganization implemented by the Debtors. However, once the automatic stay is terminated against the Debtors— whether by completion of the plan or dismissal—ECMC is free to pursue the collection of such costs unless, in accordance with the "undue hardship" standard set forth in § 523(a)(8), a determination of dischargeability is made by this Court.

█ In summation, any collection costs assessed by ECMC (or its predecessor(s) in interest) will be allowed under 11 U.S.C. § 502, thus entitling the claims to a distribution of estate assets, to the extent that the costs were (1) assessed prepetition and (2) are reasonable for purposes of the formula set forth 34 C.F.R. § 682.410(b)(2). So as to permit the Debtors the opportunity to properly assess this matter, ECMC shall be required to furnish to the Debtors' attorney, in a manner conforming to the Bankruptcy Rules of Discovery, any relevant documentation or otherwise pertinent information relating to these requirements. From a procedural standpoint, the Debt-

ors, so as to have time to review the documentation ECMC is required to provided, shall be given forty-five (45) days to either report to the Court or file any supplemental objections or other appropriate motions.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Clerk of Courts, United States Bankruptcy Court, hold this matter in abeyance for a period of forty-five (45) days, commencing from the entry of this Order.