**In re: Barney SPROLITO, Debtor.**

**No. 99–15227 (GAC).**

United States Bankruptcy Court, D. Puerto Rico.

Sept. 15, 2006.

14. See Opinion and Order entered on January 17, 2006, dkt. No. 744.

Rafael Colon Flores, Ponce, PR, for Debtor.

## DECISION AND ORDER

GERARDO A. CARLO–ALTIERI, Chief Judge.

### I. *Procedural Background*

Pending before this Court is a Motion for Summary Judgment filed by EduCap, Inc. ("EduCap") (Docket # 30). On November 3, 1999, the debtor, Barney Sprolito ("Sprolito") filed a petition under Chapter 13 of the Bankruptcy Code (Docket # 1). Educap filed Proof of Claim # 3 for the amount of $7,052.44 and Proof of Claim # 4 for the amount of $7,745.31, both pertaining to student loans.[1] The debtor completed his plan and on May 11, 2004, the trustee filed a final report and account certifying that the estate had been fully administered (Docket # 14). No objec-

---

1. Both proofs of claim were originally filed under the name of Wells Fargo.

tions were filed to the trustee's report and Sprolito's discharge was entered on July 12, 2004 (Docket # 15).

On November 18, 2004, Sprolito filed a motion requesting the reopening of the case under 11 U.S.C. § 350 (Docket # 19), alleging a violation of the discharge injunction by Educap in seeking to collect discharged debts. The Court granted the motion and reopened the case on January 11, 2005 (Docket # 19).

After the case was reopened, Sprolito filed a motion seeking an order to show cause against Educap for trying to collect the sum of $8,416.12 (Docket # 20) and on December 27, 2005, Educap filed a response (Docket # 21). On January 13, 2006, Educap filed a motion for summary judgment, statement of uncontested facts in support thereof and a memorandum of law in support thereof (Docket # 30, # 31 and # 32). On February 16, 2006, Sprolito filed an opposition to the motion for summary judgment and a memorandum of law in support (Docket # 38). Educap filed a sur-reply on February 27, 2006 (Docket # 39) and thereafter, on March 10, 2006, Sprolito filed an opposition to the sur-reply (Docket # 40). On the same day, Sprolito filed a motion requesting a hearing (Docket # 41) and a motion submitting documents (Docket # 42).

## II. *Position of the Parties*

### A. *Sprolito*

Sprolito maintains that in Schedule F, he listed two student loans owed to Educap: the first loan for $7,052.44 and the second loan for $7,745.31 and that both debts had been discharged. Sprolito avers that in a letter dated October 25, 2004, VanRu Credit Corp. ("VanRu") tried to collect the amount of $8,416.12. He avers that this amount corresponds to the principal of the debt and not the interest on the loans. Sprolito contends that he paid the

amounts requested in both proofs of claim in full, via the Chapter 13 plan. Thus, Sprolito contends that Educap and its collection agency, VanRu, attempted to collect the principal amount already paid through Sprolito's bankruptcy case. Sprolito contends that even if interest accrued throughout the life of the Chapter 13 plan, Educap could not collect the principal amount of the loans again. Sprolito also contends that Educap is trying to collect collection fees and not accrued interest on both accounts.

Sprolito avers that Educap should have computed all interest to be paid on the loans and this amount should have been included in both proofs of claim. Educap accepted the terms of the Chapter 13 plan without objection, therefore Sprolito argues that it is bound by the plan. Sprolito also avers that there were enough funds deposited in the plan to have paid all the interest owed to Educap. Sprolito contends that Educap should have notified him so that he could have amended the plan and this matter could have been resolved, thus avoiding the extra charges. Sprolito requests that the Court order Educap to stop the collection efforts and he requests that the Court deny Educap's motion for summary judgement.

### B. *Educap*

Educap contends that educational loans are nondischargeable, as clearly disclosed in the Promissory Notes and on the proofs of claim. Educap asserts that interest continued to accrue throughout the Chapter 13 plan, so even though the trustee paid 100% of the principal due on the loans, pursuant to the proofs of claim filed, there was interest due and owing on said educational loans at the conclusion of the case. Educap maintains that the trustee's records reflect that the principal amount was paid, but not the interest that continued to

accrue. Educap also asserts that Sprolito does not dispute the fact that the student loans are excepted from discharge or that the claims are not paid in full. Thus, Educap denies any violation of the discharge injunction because the debt in question was nondischargeable and because it was within its right to request the assistance of VanRu in the collection of the unpaid balances of the loans.

Educap attaches the declaration of David Falsetto ("Falsetto"), Director of Default Management of Educap, who explains the amount due on both loans. In the declaration, Falsetto indicates that on November 3, 1999, when Sprolito filed for bankruptcy there was a balance on loan 1144973 in the amount of $7,7745.31, which included principal and interest. Pursuant to the terms of the promissory note interest accrued at a variable rate. During the term of the bankruptcy the total payments made were in the amount of $7,7745.31, which in accordance with the promissory note were applied first to interest and then to the principal. When Sprolito's Chapter 13 was completed and closed there remained a principal balance of $2,986.33, plus interest. Falsetto further indicates that the loan went into default in September 2004 and was referred to VanRu for collection. In accordance with the terms of the promissory note, collection fees were assessed on the unpaid balance of the loan and VanRu attempted to collect a total of approximately $4,000.00.

Regarding loan 1507482, Falsetto states that on November 3, 1999, when Sprolito filed for bankruptcy there was a balance in the amount of $7,052.44, which included principal and interest, accruing at a variable rate. During the bankruptcy, there where total payments made in the amount of $7,052.44, which likewise was applied first to interest and then to the principal. When Sprolito's Chapter 13 was completed

and closed, there remained a principal balance of $2,717.09, plus interest. This loan likewise went into default in September 2004 and the loan was referred to VanRu for collection, in accordance with the terms of the promissory note. VanRu again attempted to collect approximately $4,000 in total. Finally, Falsetto declares that he reviewed the letter sent to Sprolito on October 25, 2004, and asserts that the balance contained therein is the total combined balance due on both loans, including principal, interest and the collection fees that were assessed following default.

Educap requests that the Court deny Sprolito's motion seeking an order to show cause and allow Educap the attorney's fees and costs wrongfully incurred. Finally, Educap requests that the Court grant its motion for summary judgment.

## II. *Discussion*

### A. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(b); *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrate that there is no genuine issue of material fact. *In re Edgardo Ryan Rijos v. Banco Bilbao Vizcaya & Citibank (In re Rijos)*, 263 B.R. 382, 388 (1st Cir. BAP 2001).

Once the movant makes a prima facie showing that there are no genuine issues of material fact, the burden of proof shifts to the party opposing the motion for summary judgment to establish that there are questions of fact. 10 *Collier on Bankruptcy*, ¶ 7056.05, p. 7056–7 (15th ed.2005). The Court must view the evidence in the light most favorable to the nonmoving party. *In re Rijos*, 263 B.R. 382, at 388. Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." *Id.*

### B. *Exceptions to Discharge*

■ In the case before us, Sprolito received a discharge pursuant to 11 U.S.C. § 1328(a) on July 12, 2004. Thus, Sprolito is discharged from all debts that arose before the date of the order for relief that are not excepted from discharge pursuant to § 523. Section 523 excepts from discharge:

> (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

11 U.S.C. § 523(a)(8). Thus, pursuant to § 523, student loans are generally nondischargeable. When a discharge is entered it operates as a permanent injunction against enforcement of all discharged debts pursuant to 11 U.S.C. § 524(a), but because student loans are nondischarge-able, the discharge injunction does not apply to them.

### C. *Accrual of Interest During the Term of the Chapter 13*

■ Although Sprolito's student loans may have been payed in full through the Chapter 13 plan according to the proofs of claim filed, interest continued to accrue through the life of the bankruptcy case. The First Circuit Court of Appeals explains how, in the seminal case of *Bruning v. U.S.*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), the Supreme Court of the United States intended to give similar treatment regarding post-petition interest to tax liabilities and student loans. *In re Cousins*, 209 F.3d 38, 40 n. 1 (1st Cir. 2000).

In *In re Cousins*, a Chapter 12 debtor who had completed all payments under a confirmed plan and received a discharge brought an adversary proceeding for determination that he was not liable for post-petition interest on the IRS's fully paid, nondischargeable pre-petition tax claim. The First Circuit, relying on *Bruning v. U.S.*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), held that the debtor remained liable for post-petition interest on a nondischargeable pre-petition tax debt and the discharge did not discharge the debtor's personal liability for the post-petition interest. In a footnote, the First Circuit extended the same treatment for post-petition tax interest to post-petition student loan interest. *In re Cousins*, 209 F.3d 38, 40 n. 1 (1st Cir.2000).

Also, in a case similar to the one before this Court, in *In re Boone*, 215 B.R. 386 (Bankr.S.D.Ill.1997), the bankruptcy court held that interest continued to accrue on debtor's nondischargeable student loan obligation during the pendency of her Chapter 13 case, and the debtor remained personally liable at the conclusion of her bankruptcy case for post-petition interest

that had accrued, even though the debtor paid the full amount of the student loan creditor's pre-petition claim pursuant to her plan.

■ This Court concludes that although Sprolito proposed to pay Educap's claim in full, this proposal did not include the payment of post-petition interest, which continued to accrue during the life of the plan. Interest accruing over the life of the plan is nondischargeable. Thus, even a 100% plan cannot pay off a nondischargeable interest bearing student loan. See *Leeper v. Pa. Higher Educ. Assistance Agency (PHEAA)*, 49 F.3d 98 (3rd Cir. 1995) (interest accrues post-petition on nondischargeable student loan during Chapter 13 case); *In re Shelbayah*, 165 B.R. 332, 337 (Bankr.N.D.Ga.1994) (post-petition interest on nondischargeable student loan accrues during Chapter 13 bankruptcy and is not dischargeable); *Ridder v. Great Lakes Higher Educ. Corp. (In re Ridder)*, 171 B.R. 345 (Bankr.W.D.Wis. 1994) (post-petition interest on a nondischargeable student loan may be collected after bankruptcy concludes); *Branch v. Unipac/Nebhelp (Matter of Branch)*, 175 B.R. 732, 735 (Bankr.D.Neb.1994); and *In re Jordan*, 146 B.R. 31 (D.Colo.1992).

Although Sprolito contends that Educap should have included the interest owed in the proofs of claim, section 502(b)(2) prohibits creditors from filing claims for unmatured interest against the bankruptcy estate. 11 U.S.C. § 502(b)(2). The student loan post-petition interest is unmatured interest. Thus, Educap could not have included the post-petition interest it is entitled to in its proofs of claim, as alleged by Sprolito.

### D. *Time Period for Filing Post–Petition Accrued Interest*

■ By virtue of 20 U.S.C. § 1091a, Congress eliminated any time constraint on the collection of student loan obligations, guaranteed by the United States or a guaranty agency. *In re Loving*, 269 B.R. 655, 663 (Bankr.S.D.Ind.2001). The provision states in relevant part:

(1) It is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which debts may be enforced.

(2) Notwithstanding any other provision of statute, regulation, or administrative limitation, no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken ...

20 U.S.C. § 1091a(a).

The facts in *In re Loving*, 269 B.R. 655, are similar to the facts in the present adversary proceeding. In *In re Loving*, a Chapter 13 debtor moved to enforce the discharge injunction against a student loan creditor. The facts were that the debtor completed all of her payments in her Chapter 13 case and a discharge was entered on August 7, 1997. Later, in February of 2001, the creditor, ECMC, informed her that she still owed $10,000 on her student loans. Debtor moved to reopen the case to enforce the discharge injunction of § 524. The bankruptcy court held that the creditor was not barred, by the res judicata effect of the debtor's confirmed plan, from attempting to collect the unpaid balance of the student loan debt, including accrued post-petition interest. The court also held that creditor's delay, in waiting almost four years after the debtor had received her discharge, did not bar the creditor, on an equitable estoppel or laches theory, from attempting to collect the remaining debt. The court concluded that pursuant to 20 U.S.C. § 1091a(a)(2)(b), the

creditor was not subject to any statute of limitations or equitable doctrine in pursuing debtor for the balance due under the loans. *In re Loving,* 269 B.R. at 663.

The Court concludes that Educap is not subject to any statute of limitations or equitable doctrine in pursuing Sprolito for the balance due under the student loans.

### E. *Reasonable Collection Costs*

 Reasonable collection costs are to be assessed to the debtor whether or not they are provided in the Promissory Note pursuant to 20 U.S.C. § 1091a(b)(1). Section 1091a(b)(1) provides, in pertinent part, that:

> (b) Assessment of costs and other charges Notwithstanding any provision of State law to the contrary-
>
> (1) **a borrower who has defaulted on a loan** made under this subchapter and part C of subchapter I of chapter 34 of Title 42 **shall be required to pay,** in addition to other charges specified in this subchapter and part C of subchapter I of chapter 34 of Title 42, **reasonable collection costs** ...

20 U.S.C. § 1091a(b)(1) *(emphasis ours).* "[A]ssessing collection costs to the debtor is not only authorized by statute, it is mandated." *In re Featherston,* 238 B.R. 377, 380 (Bankr.S.D.Ohio 1999).

The Code of Federal Regulations regulates the collections fees that are to be assessed by the collection agencies pertaining to student loans, providing that:

> Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim. These costs may include,

but are not limited to, all attorney's fees, collection agency charges, and court costs. Except as provided in §§ 682.401(b)(27) and 682.405(b)(1)(iv), the amount charged a borrower must equal the lesser of—

> (i) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or
>
> (ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education.

34 C.F.R. § 682.410. Section 34 CFR 30.60 describes the formula to be used when calculating the collection costs.

The Department of Education's cost-averaging method places a cap on collection costs equal to 25% of the total debt.

> [T]he DOE chose the cost-averaging method because the Secretary of Education has determined that tracking costs of collection of each defaulted loan would create too onerous of a system, that such a level of specificity would be untenable, inefficient, and that such detailed record keeping would result in far higher collection costs for debtors than percentage-based collection costs.

*In re Schlehr,* 290 B.R. 387, 392 (Bankr. D.Mont.2003). In *In re Schleher,* the court explained that the federal regulation places a cap on collection costs equal to 25% of the total debt. *Id.* at 398. See also *In re Evans,* 322 B.R. 429, 436 and 438 (Bankr.W.D.Wash.2005) and *U.S. v. Vilus,* 419 F.Supp.2d 293, 298 (E.D.N.Y. 2005)

In *In re Brown,* 310 B.R. 341 (Bankr. N.D.Ohio 2004), although the court distinguishes between loans held by the government and private guaranty agencies, it states that the collection costs are to be "in accord with basic principles of equity" and that:

the reasonableness of collection charges in general must be made on a case-by-case basis, looking mainly to factors such as the amount of the debt, and the necessary time and energy the creditor expended in order to collect the debt. *In re Brown,* 310 B.R. at 345. The court considered the collection fees assessed in four consolidated cases. The collection fees assessed did not surpass the 25% cap set by the federal regulation in any of the cases.

In *Educational Credit Management Corp. v. Barnes,* 318 B.R. 482 (S.D.Ind. 2004), the United States District Court for the District of Indiana upheld the constitutionality of § 682.410(b)(2) and decided that a 18.06% charge by a creditor for collection costs was reasonable because it did not surpass the 25% cap set by the federal regulation. *Id.* at 486, n. 3 and at 495.

The Court concludes that Educap is entitled to collection costs pursuant to § 1091a(b)(1). Moreover, in the present case, Sprolito is obliged to pay collection costs if he defaulted pursuant to paragraph 8 of the second page of the Promissory Notes. Thus, pursuant to the Promissory Notes signed by Sprolito, he is obliged to pay collection costs. Sprolito's Promissory Notes do not set a cap for the amount of collection costs. It simply states that "[i]f I default on this loan, the lender may declare, without notice or demand, the entire unpaid amount of the loan, including interest, late charges and all costs of collection and reasonable attorney's fees immediately due and payable." Paragraph 8 of the second page in the Promissory Notes. Thus, the Court concludes that Sprolito can be charged reasonable collection costs.

IV. *Summary*

In the present case, Sprolito filed a petition under Chapter 13 of the Bankruptcy Code on November 3, 1999 and a discharge was entered on July 12, 2004. He payed claims # 3 and # 4, pertaining to his student loans, in full. Nonetheless, Educap is seeking to collect post-petition interest and collection fees. The Court concludes that Sprolito's student loans are nondischargeable and that Educap is entitled to post-petition interest and reasonable collection fees.

■ Notwithstanding, summary judgment is only available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In the present case, this Court concludes that Educap has not met the burden of showing that there are no genuine issues of material fact.

This Court has doubts as to how the collection fees were assessed by VanRu and Educap. For example, if according to Falsetto's declaration that the loans went into default in September of 2004, why were collection fees assessed six months earlier in March of 2004 if Sprolito had been making payments through his Chapter 13 plan. Moreover, the collection fees assessed in March of 2004 represent the exact amount that was paid to Educap that month.

The Court is unable to determine how Educap computed the sum of $8,416 requested by it in the letter sent to Sprolito on October 1999. In Falsetto's declaration, he avers that this amount corresponds to: in loan 1144973, $2,986.83 in principal and interest, plus collection fees, and in loan 1507482, $2,717.09 in principal and interest, plus collection fees. Neither

indicate the total amount of the collection fees.

Moreover, based on the loan servicing history reports, Educap is seeking in loan 1144973, total collection fees in the amount of $4,770.70 for an original principal of $8,100.00, or almost 59% of the principal, and in loan 1507482, $4,341.19 in collection fees for principal of $7,185.00, or more that 60% of the principal. Thus, the collection fees assessed in both accounts greatly exceeds the 25% cap set by case law and the federal regulation. This also does not take into account that if the collection fees were assessed in September of 2004 after Sprolito's default, the principal owing would only include unmatured interest and in those amounts, the collection fees would greatly exceed the amount owing and would clearly not be reasonable. These discrepancies need to be addressed before this Court can determine the amount that Educap is entitled to.

## ORDER

WHEREFORE IT IS ORDERED that EduCap's Motion for Summary Judgment (Docket # 30) shall be, and it hereby is, GRANTED IN PART, as to its entitlement to post-petition interest and reasonable collection fees and DENIED as to the amount sought because the Court is unable to determine how it was calculated. An evidentiary hearing is scheduled for December 13, 2006 at 9:00 a.m. in the United States Bankruptcy Court, 300 Recinto Sur, Court Room 3, Old San Juan, Puerto Rico.

SO ORDERED.